815 A.2d 594

**Marjorie WOLLOCH, Appellee**

**v.**

**Robert AIKEN, M.D., Michelle Meltzer, M.D., Richard Keohane, M.D., Pennsylvania Hospital, and Thomas Jefferson Hospital, Appellants,**

**Appeal of Robert Aiken, M.D.**

**Marjorie Wolloch, Appellee**

**v.**

**Robert Aiken, M.D., Michelle Meltzer, M.D., Richard Keohane, M.D., Pennsylvania Hospital, and Thomas Jefferson Hospital, Appellants,**

**Appeal of Michelle Meltzer (Three Cases).**

Supreme Court of Pennsylvania.

Argued Oct. 15, 2001.

Decided Dec. 31, 2002.

Reargument Denied Feb. 28, 2003.

336

---

KimKim Kocher, Alan H. Starr, Ana Marie Bryan, Philadelphia, for Robert Aiken, M.D.

James P. Kilcoyne, Plymouh Meeting, for Richard B. Keohane, M.D.

Fredric L. Goldfein, Deborah Marie Knight, Roseann Lynn Brenner, Philadelphia, for Michelle Meltzer.

Michael D. Brophy, Philadelphia, for Thomas Jefferson University Hosp.

Benedict A. Casey, Philadelphia, for Marjorie Wolloch.

Adrian R. King, Philadelphia, for Pennsylvania Hosp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Chief Justice ZAPPALA.

This appeal involves consideration of discovery violations and sanctions and their interaction with procedural rules pertaining to summary judgment.

Appellee, Marjorie Wolloch, filed a medical malpractice complaint in 1994 against Doctors Aiken, Meltzer, and Keohane, and against Thomas Jefferson University Hospital and Pennsylvania Hospital. The complaint alleged that, as a result of the doctors' and hospitals' failure to recognize her symptoms and diagnose her condition, her treatment for cancer was improperly delayed, allowing a malignant tumor to grow and causing increased pain and suffering, permanent disability, and other damages. Discovery lasted for approximately three years.

At the conclusion of discovery, a case management conference was held. The case management order scheduled trial for August 3, 1998, and required Wolloch to identify her medical experts and submit expert reports no later than February 2, 1998. Wolloch applied for and was granted one extension of time, but did not meet the second deadline. Shortly after expiration of the deadline, each of the medical defendants filed a motion for summary judgment alleging that Wolloch could not make out a *prima facie* case of medical malpractice without expert reports. On April 29, 1998, the trial court granted the motions for summary judgment in favor of all five defendants.

Notwithstanding the summary judgments, Wolloch filed expert medical reports on May 4, 14, and 30, 1998, and moved to vacate all five of the summary judgment orders. Because the

trial court did not have sufficient time to act on Wolloch's motion to vacate during the allowable appeal period, Wolloch filed a timely appeal to the Superior Court on May 22, 1998. The Superior Court reversed the trial court's grant of summary judgment for Doctors Aiken and Meltzer and remanded for further proceedings.

We granted allowance of appeal to consider one issue: whether the Superior Court's opinion conflicts with its subsequent decision in *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa.Super.2000), other opinions of the Superior Court, and with Pa.R.C.P. 1035.2. The parties have effectively briefed and argued both *Sacred Heart* and Rule 1035.2.

We will look first at the interpretation and application of Rule 1035.2 (motion for summary judgment).

Rule 1035.2 reads:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

The *Explanatory Comment*—1996 includes the following guidance for applying the Rule:

Special note should be taken of the requirement under Rule 1035.2(2) that the motion be made after completion of discovery relevant to the motion, including the production of expert reports. While Rule 1035.2(2) is prefaced with the statement that any party may file a motion after the relevant pleadings have closed, the adverse party must be given

adequate time to develop the case and the motion will be premature if filed before the adverse party has completed discovery relevant to the motion. The purpose of the rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed.

The timing of the motion is important. . . . Under Rule 1035.2(2), the motion is brought "after the completion of discovery relevant to the motion."

New Rule 1035.2 provides that a party may move for summary judgment after the "relevant" pleadings are closed and, in order to provide discretion in the lower court, within such time so as not to "unreasonably" delay the trial.

■ The *Explanatory Comment* written at the time the Rule was revised in 1996 is instructive, as it addresses several features involved in this case. The Rule is intended to foster, not inhibit, the discretion of the trial court. The purpose of the Rule is to weed out meritless cases after discovery has been completed, not to eliminate meritorious claims prematurely before discovery is completed. The motion is brought after the completion of relevant discovery, and the timing is important.

■ Appellee, plaintiff below, failed to submit necessary expert medical reports within the time allotted in the case management order. But, according to Appellee's brief, trial practice frequently involves submission of such reports after the deadline. This is commonplace because an order requiring the completion of discovery by a certain date does not prohibit discovery after that date so long as the trial is not delayed. Thus Appellee argues that Appellants' motions for summary judgment immediately after the deadline were an attempt to achieve precisely what the Rule condemns, that is, to eliminate her meritorious claim prematurely. She argues that her claim was not groundless, that she was engaged in the process of procuring the expert medical reports necessary to establish a *prima facie* case, and that she expected to be

permitted to submit the reports after the deadline so long as she did not delay the trial.

Appellee also argues that Pennsylvania Rule of Civil Procedure 1035.3 (response to motion for summary judgment) is relevant. The Rule provides:

(b) An adverse party may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence.

(c) The court may rule upon the motion for judgment or permit affidavits to be obtained, depositions to be taken or other discovery to be had or make such other order as is just.

Pa.R.C.P. 1035.3(b), (c). Appellee argues that her expert reports should have been accepted as supplementation of the record under Pa.R.C.P. 1035.3(b), not rejected because they were late and in violation of the case management order.

This is a curious argument. Appellee did not file a timely response to the motion for summary judgment supplemented with her expert reports, though Rule 1035.3(b) permits it.[1] Instead, she waited until after summary judgment had been entered, then submitted the expert reports in such indolent fashion that the trial court had no time to consider them before the lapse of Appellee's allowable time to appeal from summary judgment.

Appellants, on the other hand, argue that the plain words of Rule 1035.2 contemplate such motions for summary judgment as they filed and that there was nothing premature about the motions. They contend that they waited until discovery was closed, and only then moved for summary judgment. Appellants argue that Appellee was dilatory in her search for expert medical testimony to support her claim, and that if Appellee had grounds for a further extension of time, Appellants maintain that she could have sought a second extension of the deadline. She failed to do so, however, and the time for discovery was complete before Appellants moved for summary judgment.

1. See *Gerrow v. John Royle & Sons,* (Pa.2002).

We agree with Appellants' position. Whether or not trial practice frequently involves informal or unofficial extensions of discovery without the imposition of sanctions, as Appellee suggests, we must look at the record of the case to determine whether or not discovery is complete to establish the timeliness or prematurity of a motion for summary judgment under Rule 1035.2. The record establishes that discovery was complete, for purposes of Rule 1035.2, at the time Appellants filed their motions for summary judgment. It was therefore permissible and proper for the trial court to enter summary judgment.

An examination of *Miller v. Sacred Heart Hospital,* leads to the same conclusion.[2] *Sacred Heart* is on all fours with this case. It, too, was a medical malpractice action against doctors and a hospital wherein the plaintiff violated discovery deadlines and the trial court granted summary judgment for the defendants. On appeal, the Superior Court analyzed the case under the rules pertaining to summary judgment, not under the rules pertaining to discovery sanctions. It held that, whether or not entry of summary judgment would have been overly harsh as a sanction for a discovery violation, the trial court was not acting on a motion for sanctions. The trial court was ruling on a motion for summary judgment due to the plaintiff's failure to establish a *prima facie* case, and the entry of summary judgment was proper.

In reaching this conclusion, the *Sacred Heart* court discussed and distinguished *Steinfurth v. LaManna,* 404 Pa.Super. 384, 590 A.2d 1286 (1991). *Steinfurth* had set forth the factors a trial court should consider when responding to a motion for sanctions under Pa.R.C.P. 4019.[3] The appellant in

---

**2.** There is no question of whether the Superior Court should have followed *Sacred Heart.* It could not have done so: *Sacred Heart* was decided after the decision in this case. It is a question of whether *Sacred Heart* represents the proper analysis which should have been utilized in this case. We hold that it does and adopt precisely the same analysis.

**3.** Rule 4019 permits a trial court, *upon motion* of an aggrieved party, to impose sanctions for discovery violations.

*Sacred Heart,* seeking reversal of the trial court's entry of summary judgment, argued that the trial court erred in neglecting the factors in *Steinfurth* pertaining to discovery sanctions. The Superior Court rejected that argument, holding that *Steinfurth* was inapposite because *Sacred Heart* was not a "discovery sanctions case."

There is no material difference between *Sacred Heart* and this case. Neither case involved a motion for discovery sanctions under Pa.R.C.P. 4019. Both cases involved motions for summary judgment under Rule 1035.2. Perhaps, if summary judgment had been imposed as a sanction under Pa.R.C.P. 4019, it would have been overly harsh. Nevertheless, we cannot approach this as a "discovery sanctions case" in the absence of a motion for sanctions. The trial court correctly analyzed the motion for summary judgment under Rule 1035.2 and concluded that Appellee could not establish a *prima facie* case without expert testimony, and Appellants were therefore entitled to summary judgment. This conclusion was correct.

We therefore hold that the Superior Court erred in reversing the order of the trial court. The order of the Superior Court is reversed and the order of the trial court reinstated.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Justice NIGRO files a concurring opinion.

Justice NIGRO, concurring.

As Appellee failed to submit her expert reports within the time allotted in the case management order and, without such reports, was unable to make out a *prima facie* case of medical malpractice, I agree with the majority that the trial court properly granted summary judgment in Appellant's favor. On the other hand, for the reasons stated in my dissenting opinion in *Gerrow v. John Royle & Sons,* 5 EAP 2001, J–124–2001, 2002 WL 31915024 (Pa.2002), I disagree that Appellee could have avoided the expert report deadline by attaching untimely reports to her summary judgment response pursuant to Pennsylvania Rule of Civil Procedure 1035.3(b).