## Milly v. Joseph J. Conti Ltd.

C.P. of Mercer County, no. 2001-0857.

*John E. Quinn,* for plaintiffs.
*Robert J. Marino,* for defendants.

FORNELLI, *P.J.,* July 8, 2004—The matter for disposition is before the court on defendant's amended motion for summary judgment. For the reasons set forth hereafter, it will be granted.

This civil action arose as follows:

On October 16, 1997, Julia A. Milly, plaintiff-wife, had an ectopic tubal pregnancy. Shortly thereafter, plaintiff-wife began to complain of persistent abdominal pain that occurred approximately one hour after eating, with diarrhea and multiple loose bowel movements per day. Plaintiff-wife sought treatment from Joseph M. Micchia Jr. D.O., who prescribed Levbid during a visit on October 16, 1997, and Hyoscyamine during another visit on November 5, 1997. Micchia informed plaintiff-wife that her diagnosed condition was irritable bowel syndrome. Plaintiff-wife was again diagnosed with irritable bowel syndrome by Charles E. D'Auria M.D. during a visit on May 18, 1998.

By March 11, 1999, plaintiff-wife's symptoms had continued to worsen. On March 11, 1999, plaintiff-wife visited Doctor Sharon Miller D.O. and, on or about March 20, 1999, plaintiff-wife was diagnosed with, and laboratory tests confirmed, the presence of adenocarcinoma in the rectum.

Plaintiffs filed this action alleging causes of action against (1) defendant, Joseph J. Conti D.O. Ltd., Conti Ltd., for negligence through the negligence of its agents, servants or employees, including the defendant doctors; (2) Joseph M. Micchia Jr. D.O. and Charles E. D'Auria M.D.; and (3) Joseph J. Conti D.O. Ltd., Joseph M. Micchia Jr. D.O. and Charles E. D'Auria M.D. for loss of consortium.

Specifically, plaintiff-wife contends that as a result of the defendants' failure to properly examine, test and diagnose plaintiff-wife, her condition worsened and was

allowed to progress to a Stage III lesion. As a result of the progression, plaintiff-wife was required to undergo more invasive procedures and increased chemotherapy; the possibility of recurrence increased; the cancer spread to plaintiff-wife's lymph nodes and serosa; and plaintiff-wife became sterile and continued to experience pain and suffering.

Defendant D'Auria filed a motion for summary judgment on February 13, 2004. At the time the motion was filed, the only expert report provided by plaintiffs' counsel was that of Thomas P. Wein M.D., dated September 10, 2003. Prior to argument on the motion for summary judgment, plaintiffs' counsel provided a second report of Doctor Wein, dated February 15, 2004. Following argument, this court issued an order, dated March 1, 2004, permitting the deposition of Dr. Wein.

After the deposition of Dr. Wein was taken, defendant D'Auria filed the instant amended motion for summary judgment contending that as a matter of law, Dr. Wein is not competent or qualified to testify concerning matters relating to the plaintiff-wife's cancer, survival rate or related matters. Furthermore, defendant D'Auria argues that as a matter of law, Dr. Wein's testimony concerning causation is insufficient.

The standard to be utilized in addressing a motion for summary judgment is set forth by Pennsylvania Rule of Civil Procedure 1035.2 which provides:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

558

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

The moving party has the burden of proving the nonexistence of any genuine issue of fact based upon the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and reports signed by an expert that would, if filed, comply with Rule 4003.5 (a)(1). Pa.R.C.P. 1035.1.

The non-moving party "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Company,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). The court must "resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. . . . Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law." *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 471, 684 A.2d 137, 140 (1996) (cita-

tions omitted), *alloc. denied,* 548 Pa. 628, 693 A.2d 967 (1997) (citing *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 98-99, 644 A.2d 1251, 1254 (1994)).

Summary judgment is appropriate under Pa.R.C.P. 1035.2 in a medical malpractice action where the plaintiff fails to identify expert medical evidence essential to establish a prima facie claim after relevant discovery is completed. See *Wolloch v. Aiken,* 572 Pa. 335, 815 A.2d 594, 598 (2002).

Defendant's motion for summary judgment is premised on two grounds: (1) as a matter of law, Dr. Wein is not competent or qualified to testify concerning matters relating to the plaintiff's cancer, plaintiff's survival rate and related matters under the MCARE Act, 40 P.S. §1303.512; and (2) as a matter of law, Dr. Wein's testimony concerning causation is insufficient. In support of its argument, defendant cites the deposition testimony of Dr. Wein, as well as the reports furnished by Dr. Wein on September 10, 2003 and February 15, 2004. In his September 10, 2003 report, Dr. Wein stated:

"After examining the medical records . . . , it strikes me that Mrs. Milly should have been more aggressively evaluated for her GI complaints which dated from October 1997. I find that although a colonoscopy may not have been required early on, it certainly should have been ordered when she continued to have persistent symptoms, and saw Dr. D'Auria in May 1998. In the case of Julia Milly, this is even more important given the family history of colon cancer, specifically Mrs. Milly's father's death at age 62 from this disease.

"I believe that colon cancer should have been suspected and evaluated for at a much earlier stage in Mrs. Milly's medical evaluation. If the cancer had been found nearly a year earlier than it was diagnosed, the likelihood of any less invasive tumor with less nodal involvement would have been probable." (Exhibit 1—defendant D'Auria's amended motion for summary judgment.)

In his February 15, 2004 report, Dr. Wein stated:

"Based upon my review of Julia Milly's medical records it is my opinion within a reasonable degree of medical certainty, that Dr. Micchia and Dr. D'Auria did not meet the standard of care in pursuing the evaluation of Mrs. Milly's gastrointestinal symptoms. Although Mrs. Milly's symptoms were somewhat nonspecific and could certainly be confused with those of irritable bowel syndrome, or other colorectal problems . . . it does not appear that either Dr. Micchia or Dr. D'Auria did a thorough evaluation in the office. There is no evidence that a thorough family history was obtained, which would certainly have revealed the presence of colon cancer in Mrs. Milly's father, who died at the age of 62 of that disease. This historical fact by itself would raise one's index of suspicion for colorectal cancer and would certainly require a more aggressive approach to looking for a neoplasm. I also note that during her four visits to her primary care physicians, a digital rectal examination should have been performed routinely as part of her office evaluation. This may well have given some earlier indication that an abnormality was present and have led to earlier diagnosis and treatment of her tumor. It should also be noted that although with the initial visits in October and November a single stool specimen was sent for occult

blood testing, there was never another testing done for occult blood. Had additional stool specimens been [sent] for occult blood testing, or had the stool been tested at the time of a digital rectal examination, a positive result may have also led to earlier colonoscopy and finding of her rectal cancer. Finally, I feel the physicians erred in this case by not sending the patient for a colonoscopy sooner, especially given the family history and the persistence of her symptoms of abnormal bowel habits. While a colonoscopy ordered in October and November may have been premature, certainly by May of 1998, with persistence of her symptoms, some form of colorectal imaging should have been obtained. The delay in the diagnosis of Mrs. Milly's colorectal cancer may have resulted in her being diagnosed at a more advanced stage of the disease, thus resulting in a different treatment regimen. While the surgical procedure may not have been altered, Mrs. Milly may not have been required to undergo the six-month postoperative chemotherapy. Also, if her tumor had been diagnosed at an earlier stage, the prognosis long-term would be more favorable. . . . In conclusion, . . . Dr. Micchia and Dr. D'Auria failed to obtain the appropriate evaluation of Julia Milly's symptoms in a timely manor [sic manner] by not doing a digital rectal examination and by not ordering an earlier colonoscopy when the patient's clinical presentation warranted doing so. This delay in treatment has decreased the patient's long-term chance of the most favorable outcome from her rectal cancer." (Exhibit 2—defendant D'Auria's amended motion for summary judgment.)

During deposition, Dr. Wein was questioned regarding the reports furnished in this matter concerning Mrs.

Milly's treatment and diagnosis. Dr. Wein testified that he is board certified in internal medicine and geriatrics; he has an adult general medical practice; he is not an oncologist, nor a pathologist; and that other than education in medical school, he has no further background in these areas. (Wein depo., pp. 5-6.) In response to questioning regarding the reports prepared by Dr. Wein in this case, Dr. Wein testified that: "it would be my opinion that if this diagnosis had been made a year before, . . . , that it is quite conceivable that, had the cancer been discovered at that time, there would not have been regional lymph node involvement, and the stage would have been either a stage one or a stage two which would have raised the issue as to whether or not chemotherapy postoperatively would have been necessary. . . . My personal experience would be that, if that had not been present, if the lymph nodes in the—had not been involved, that surgical resection at that time could possibly have been the end of the treatment." (Wein depo., pp. 11-12.)

Dr. Wein indicated that he did not attempt to review the slides in this case to make the determination and there was nothing in the records that indicated whether Mrs. Milly had cancer in 1997 and 1998, or if she did at what stage it was. (Wein depo., p. 13.) Dr. Wein indicated that there was no way of knowing what treatment would have been required if a diagnosis had been made earlier . . . that it would be a "hypothesis" on his part. (Wein depo., p. 14.) Dr. Wein indicated that the delay in treatment decreased the patient's long-term chance of the most favorable outcome from the rectal cancer. (Wein depo., p. 14.) The basis for Dr. Wein's opinion was based on sta-

tistical information obtained by Dr. Wein that indicates: "people with rectal cancer diagnosed in either stage one or stage two will have a survival rate that will variant [sic vary], depending on the stage of the diagnosis, from 75 to 100 percent. People with stage three rectal cancer usually are in the prognostic five-year survival range of 35 to 55—65 percent . . . ." (Wein depo., p. 14.)

Dr. Wein confirmed that, in his opinion, a digital examination should have been performed. (Wein depo., p. 24.) The basis for Dr. Wein's opinion was that: "the symptoms that the patient was having were gastrointestinal in nature. She was complaining of abdominal pain and change in her bowel habits. It's been my training and my experience that a digital rectal exam is part of a system exam for that particular problem." (Wein depo., pp. 24-25.)

When questioned as to whether he had any reason to believe that a mass would have been detected had a digital examination been done, Dr. Wein replied "I can't answer that. I would be—it would be conjecture to say that it would have been diagnosed initially, but it may have been. There may have been some abnormality felt." (Wein depo., pp. 25-26.)

Dr. Wein was questioned regarding occult blood testing. Dr. Wein indicated that occult blood testing was done following the November 1997 visit . . . and the results were negative. (Wein depo., pp. 28-29.) Dr. Wein stated that he was familiar with the American Cancer Society guidelines for occult blood testing and that as one form of testing, fecal occult blood testing is recommended yearly after 50. (Wein depo., p. 29.)

Dr. Wein was questioned as to whether he had an opinion, to a reasonable degree of medical certainty, whether a digital rectal examination done by Dr. Micchia on those dates would have detected a mass in the rectum consistent with cancer. Dr. Wein testified "I think that's also conjecture." (Wein depo., p. 44.) Dr. Wein was also questioned, with respect to detection of possible irregularities, as to whether he would agree that during the patient's visit to Dr. D'Auria it would also be conjecture whether any irregularities would have been detected in the digital exam. Dr. Wein testified "yes" (indicating it would also be conjecture). (Wein depo., p. 49.)

As a general rule, no person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable. 40 Pa.C.S. §1303.512(a). An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must (1) possess an unrestricted physician's license to practice medicine in any state or the District of Columbia; and (2) be engaged in or retired within the previous five years from active clinical practice or teaching. 40 Pa.C.S. §1303 .512(b). The court may waive these requirements for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience. 40 Pa.C.S. §1303.512(b).

In addition to these requirements, an expert testifying as to a physician's standard of care also must (1) be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care; (2) practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue; and (3) in the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board. 40 Pa.C.S. §1303.512(c).

A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that (1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and (2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence. 40 Pa.C.S. §1303.512(d). Furthermore, a court may waive the same subspecialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of medicine in, the applicable subspecialty or a related field of medicine within the previous five-year time period. 40 Pa.C.S. §1303.512(e).

As Dr. Wein is not an oncologist or pathologist and has no further background in these areas, Dr. Wein is not competent or qualified under 40 P.S. §1303.512 of the MCARE Act to render an opinion regarding whether plaintiff-wife's cancer would have been detected at an

earlier stage; what stage it would have been; the treatment that would have been required had cancer been detected earlier; or the survival rate and related matters.

Even if Dr. Wein was viewed as competent to render an opinion under the MCARE Act, he has not provided, by his reports or testimony, a causal connection between defendants' alleged negligence and plaintiff-wife's cancer. Plaintiffs have produced no competent evidence that plaintiff-wife ever had cancer at the time defendants treated her or if so, that it was detectable by defendants or effected by defendants' actions or inaction.

Hence this order:

## ORDER

And now, July 8, 2004, it is hereby ordered and decreed that defendant's amended motion for summary judgment is granted and judgment is hereby entered in favor of Charles E. D'Auria M.D. and Joseph J. Conti Ltd.