J-A04003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| STEPHEN KINDER, SR. AND DEBRA KINDER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| HERITAGE LOWER SALFORD LP, HERITAGE-LEDERACH, L.P., HERITAGE BUILDING GROUP, HERITAGE BUILDING GROUP, INC., HBG LEDERACH, INC., HBG LOWER SALFORD, INC., HERITAGE CONSTRUCTION CO., INC., HERITAGE HOMES GROUP, HERITAGE HOME GROUP, INC., HERITAGE RESIDENTIAL, BENCHMARK REAL ESTATE COMPANY, INC., | |
| Appellees | |
| v. | |
| EXTERIORS ASSOCIATES, INC., EXTERIORS, INC., BRADCO WICKES, WICKES COMPANIES, INC., WICKES, INC., WICKES LUMBER, BR WICKES, INC., SUPERIOR PLASTERING, INC., PENTEL ENTERPRISES, INC., ADVENT INTERNATIONAL CORPORATION, | |
| Appellees | |
| v. | |
| WIRE LATHE, INC., | |
| Appellee | No. 3813 EDA 2015 |

Appeal from the Order Entered November 23, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 10-11441

J-A04003-17

BEFORE:  SHOGAN, SOLANO, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **Filed May 30, 2017**

Appellants, Stephen Kinder, Sr. and Debra Kinder, appeal from the order granting summary judgment in favor of Appellees in this action brought for breach of contract, breach of warranty, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[1] We affirm.

The trial court summarized the procedural history of this case as follows:

> On April 30, 2010, [Appellants] filed suit against the builder, Heritage, claiming that Heritage defectively constructed their house at 870 Clubhouse Drive in the Lederach Golf Club Development.[1]  More specifically, [Appellants] assert that Heritage's defective construction resulted in water intrusion through the exterior stucco cladding and into the interior of their home.  The complaint likewise alleges that the Heritage [Appellees] failed to properly, if at all, respond to warranty claims and/or to perform necessary warranty work on the [Appellants'] home.  Finally, [Appellants] allege that the Heritage [Appellees] failed to perform required remediation and repairs, and failed to offer to reimburse [Appellants] for the cost of remediation and/or necessary repairs done by [Appellants].
>
> [1]  The Complaint names the following Heritage entities as Defendants herein: Heritage-Lederach, L.P; HBG Lederach, Inc.; Heritage-Lower Salford, L.P.; HBG-Lower Salford, Inc.; Heritage Construction Co[.], Inc; Heritage Building Group, Inc. t/d/b/a Heritage Building Group; and, Benchmark Real

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  73 P.S. §§ 201-1-201-9.3.

- 2 -

Estate Company, Inc. t/d/b/a Heritage Residential (hereafter "Heritage Defendants")[.]

The Heritage [Appellees] did not perform any of the actual construction work on [Appellants'] home. Heritage utilized subcontractors. As a result, Heritage then joined various subcontractors as [a]dditional [d]efendants, who in turn, joined their subcontractors. That is, Heritage joined Pentel Enterprises (the framer); Superior Plastering, Inc. (stucco work); Environmental Stoneworks, LLC (stone work) and Exteriors, Inc. (the roofer) as [a]dditional [d]efendants. Additional [d]efendant, Superior Plastering, Inc., then joined, Wire Lathe, Inc. who was Superior's subcontractor.

On October 17, 2011, the aforementioned [d]efendants and [a]dditional [d]efendants performed a <u>visual inspection</u> of [Appellants'] house. [However, a]dditional [d]efendant Wire Lathe, Inc. had not yet been joined as a party to the lawsuit. Consequently, it did not participate in the visual inspection.

In March of 2012, [Appellants], without notice to their counselor [or] to [the] aforementioned [d]efendants, hired remediation contractors and undertook remediation work on the subject area, thereby destroying the very property at issue in their lawsuit. [Appellants'] actions prevented [Appellees] from performing a <u>physical inspection</u> of the property in order to determine the true source/cause of the water infiltration, and ultimately mount a defense and/or establish their cross-claims.

On October 8, 2015, after hearing and argument, the trial court granted [Appellees'] Joint Motion Regarding Spoliation.[2]

> [2] On November 12, 2015, the trial court denied [Appellants'] Motion for Reconsideration regarding this ruling.

On November 23, 2015, after hearing and argument, the trial court granted [Appellees'] Motion for Summary Judgment based upon [Appellants'] inability to establish the elements of their claims as a result of the previous spoliation sanction.

[Appellants] timely appealed the aforementioned rulings.

Trial Court Opinion, 6/2/16, at 1-3 (emphasis in original).

Appellants present the following issue for our review:

Did the trial court abuse its discretion or err as a matter of law by granting [Appellees'] Motion for Summary Judgment when a less severe sanction was available in light of the extensive information in [Appellees'] possession?

Appellants' Brief at 4.

Appellants argue that the trial court abused its discretion in granting Appellees' motion *in limine* and barring Appellants from presenting evidence at trial, which led to the eventual dismissal of the action by the granting of summary judgment. Appellants' Brief at 13-16. Appellants allege that all parties have hundreds, if not thousands, of photographs of the property taken when construction began until the present. *Id*. at 13. Appellants contend that despite this information in the possession of Appellees, the trial court imposed the most severe sanction that led to the dismissal of the action. *Id*. Appellants believe that Appellees were or should have been aware of the remediation efforts and that less extreme sanctions by the trial court, such as a jury instruction on spoliation of evidence, were available. *Id*. at 14. Further, Appellants claim the trial court disregarded "the information in [Appellees'] possession" and assert that their "duty to preserve evidence is not infinite." *Id*. at 15. Appellants assert that the trial court abused its discretion in light of the fact that they purchased the residence in February of 2006, filed their complaint in April of 2010, and after living with leaks in the home for years, did not begin remediation efforts until 2012. *Id*. at 16.

In reviewing matters of summary judgment, we are governed by the following well-established principles:

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 60-61 (Pa. Super. 2006) (citation omitted).

> Motions for summary judgment implicate the plaintiff's proof of the elements of his cause of action. *Chenot*, 895 A.2d at 61 (citation omitted). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). In other words, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report," Pa.R.C.P. 1035.2(1), and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Chenot*, 895 A.2d at 61.

> When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. *Id*. We will disturb the trial court's order only upon an error of law or an abuse of discretion. "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration." *Chenot*, 895 A.2d at 61 (citation omitted). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. *Id*. (citation omitted).

> Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. *Chenot*, 895 A.2d at 61 (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. *Id*. at 61-62 (citation omitted).

*Continental Casualty Company v. Pro Machine*, 916 A.2d 1111, 1115-1116 (Pa. Super. 2007).

In addition, we are mindful of the following legal principles regarding a review of spoliation of evidence. Our Supreme Court has explained that "'[s]poliation of evidence' is the nonpreservation or significant alteration of evidence for pending or future litigation." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011) (footnote omitted).

> When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion. *Croydon Plastics Co. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa. Super. 1997) ("the decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court"), *appeal denied*, 553 Pa. 689, 717 A.2d 1028 (1998). "An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Pilon v. Bally Eng'g Structures*, 435 Pa. Super. 227, 645 A.2d 282, 285, *appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994).

*Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div.*, 781 A.2d 1263, 1269 (Pa. Super. 2001).

To determine the appropriate sanction for spoliation, the trial court must weigh three factors:

(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Mount Olivet*, 781 A.2d at 1269-70 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).[2] In this context, evaluation of the first prong, "the fault of the party who altered or destroyed the evidence," requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith. *See Mount Olivet*, 781 A.2d at 1270. The duty prong, in turn, is established where: "(1) the plaintiff knows that litigation against the defendants is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the defendants." *Id*. at 1270-71.

*Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 29 (Pa. Super. 2006) (original brackets omitted).

*PTSI, Inc. v. Haley*, 71 A.3d 304, 316 (Pa. Super. 2013).

In *Creazzo*, this Court considered whether the trial court erred in granting summary judgment in a products liability claim where the plaintiff failed to produce the allegedly defective medical device due to loss by the treating hospital. In affirming the trial court's order, we determined that the plaintiff bore responsibility for preservation of the device and that the fact

_____

2 The three-part spoliation test set forth in *Schmid* was adopted by our Supreme Court in *Schroeder v. Commonwealth, Department of Transportation*, 710 A.2d 23, 27 (Pa. 1998).

that it was lost by a third party did not excuse that responsibility. *Id*. at 29-30. Further, we concluded that failure to produce the device was prejudicial to the defendant because the defendant's expert did not have an opportunity to examine it, and proof of a defect in the particular device used was essential to the plaintiff's claim. *Id*. at 30.

In the instant case, the trial court offered the following analysis, which we adopt as our own:

> The trial court correctly determined that [Appellants] were largely at fault for destroying the evidence at issue. Case law is clear that there is an affirmative duty on the part[] of a plaintiff not to destroy the evidence which is the fundamental core of the case in litigation. In addition, courts more readily attribute blame for the destruction of evidence against a party who has an attorney at the time of spoliation[.] Roselli v. General Elec. Co., 599 A.2d 685 (Pa.Super. 1991); Tanaglia v. P&G, 737 A.2d 306 (Pa.Super. 1991)[.]
>
> In this regard, the record showed that [Appellants] had an attorney and remediated a house which had been in active litigation for two (2) years, without notifying [Appellees] or their own attorney of the same. [Appellants] filed suit for water damage in their home and then erased the destructed area prior to the defense experts conducting a physical inspection so that each could identify the cause/source of the subject water infiltration, and present a defense. [Appellants] had a duty/responsibility to preserve the very evidence that was the subject of their lawsuit and [Appellants] violated that duty. [Appellants'] counsel concedes as much with the following exchange on the record:
>
>> MR. ONORATO: ... My clients remediated without knowledge - without my knowledge ... This was a four month remediation, Your Honor. ...
>>
>> THE COURT: Okay. Did you let them[, Appellees,] know this was going on at the time?

- 8 -

MR. ONORATO: I had no knowledge?

THE COURT: So how could they[, Appellees,] have gotten there? ...

THE COURT: Do you have any kind of affirmative duty here to let them know?

MR. ONORATO: Your Honor, I believe if I had known [Appellants] were doing that I would have certainly given advance notice to [Appellees] that there was going to be remediation going on. ...

*(Notes of Testimony-Motions in Limine, 9/23/15, pgs. 29-30)*[.]

In addition, the scheduled remediation was not an oversight. [Appellants] did not remediate under emergency circumstances. According to [Appellants], they had been living in a home with water intrusion for approximately five (5) years. Further, their lawsuit had also been active for two (2) years. Thus, there was no justifiable reason for [Appellants] to remediate the damaged area during litigation, and even less of a justification to do so without notice to [Appellees]. *(Notes of Testimony-Motions in Limine, 9/23/15, p.12)*[.]

Looking at the next element for spoliation, the trial court was persuaded by the compelling prejudice arguments presented by multiple [Appellees] in support of the Motion in Limine. Counsel for [Appellee]/builder, Heritage, explained the prejudice caused to his client as a result of the remediation,

MR. BYRON: ... [Appellants'] case is against Heritage. Their contract is with Heritage. Heritage made certain warranties, you know, but the thing is, and it's an undisputable fact, Heritage itself didn't lift a hammer to build these houses. They were built by subcontractors. So, Heritage has a legal right to put the blame where it rests if it can get the evidence to do that.

**If there's a water leak coming into the kitchen, Heritage ought to be able to develop the facts with its expert, if that evidence is available, and in this case it's not because**

**[Appellants] destroyed it, and point to which particular subcontractor was responsible for that leak. It's our right.**

**Heritage is the captain of the ship, that's right, but that doesn't mean I can't get indemnification or contribution from the people who actually did the work that caused the leaks. ...**

**If I can't prove which subcontractor it was, then I'm stuck with liability that should flow somewhere else if I had the evidence to do that, but they destroyed the evidence.**

*(Notes of Testimony---Motions in Limine, 9/23/13, pgs. 37-38 and 39, emphasis added)*[.]

Defense counsel for Additional [Appellee], <u>Wire Lathe, Inc.</u>, further addressed the prejudice prong,

MR. WALSH: ... With regard to the prejudice, there is severe prejudice in this case against not only my client but the other defendants and additional defendants in this case, Your Honor, because the crux of the case is the failure or the alleged failure of the exterior wall system to [Appellants'] house.

This is a stucco exterior cladding and the argument is from [Appellants'] expert that the exterior wall system essentially failed. [**Appellants'**] **expert, Mr. Wheatley, who is an architect himself, does not specifically identify the point of water intrusion into the house, does not specifically identify what was wrong or who did what wrong with regard to construction of the house.**

**There is an acknowledgement from him and I believe from Heritage expert, Mr. Merkert, that in order to really identify the source of the water infiltration and the failure of the exterior wall system, you have to be present during remediation. You have to be**

- 10 -

**present when the stucco and the exterior cladding of the house is removed so that you can see the points of penetration, you can see the actual water damage.**

[Appellants] had made the argument that the experts can rely on the photographs which were taken during remediation, but I submit to the Court, Your Honor, that that is not actual proof of what went wrong with this exterior wall system. The photographs were taken by [Appellants] themselves. **They were not even taken by an expert, and bear in mind, Your Honor, that [Appellants] did have an expert on board at the time that they did the remediation, but their expert wasn't even present during remediation. I had retained an expert to look at [Appellants'] deposition, the photographs and I attached a copy of Mr. Popolizios report. He's a professional engineer.**

**His opinion is basically that without the opportunity to look at the actual underlayment during the course of remediation that he was unable to form an opinion within a reasonable degree of certainty. The reason I attached that report, Your Honor, is again to support our position that there is significant prejudice with regard to the spoliation.**

*(Notes of Testimony- Motions in Limine, 9/23/15, pgs. 6-9, emphasis added)*[.]

Defendant <u>Superior Plastering's</u> counsel also described [his] client's prejudice,

MR. ANASTASIA: John Anastasia, Your Honor, on behalf of defendant, Superior Plastering. We did the actual cement work, however, the additional defendant that we joined, Wire Lathe, who was our subcontractor did all the wiring, all the paper, the tar paper underneath, all the waterproofing, things of that nature, and there's a large dispute over, so to speak, who is at fault for doing what. Were the

- 11 -

windows properly installed, how did the various levels overlap each other, was it appropriate, was it inappropriate.

So I think Mr. Walsh articulated very well all of the points that are relevant in terms of examining the case law and the standards, but **the reason I wanted to speak on this issue of the sanction and prejudice is because it's a domino effect, Your Honor.**

**If there's no evidence permissible against Mr. Walsh because of the conduct of** [**Appellant**] **but I'm left standing in the case to defend myself against the subcontractor who I have a cross-claim against or a joinder claim against saying I just brought in the concrete, you have to contribute to the damages because you did something wrong, well, how can I prove my case? ...**

**So, in essence, all** [**Appellees**] **have been deprived of the opportunity not only to defend themselves from** [**Appellants'**] **claims, but, just as importantly, if not more importantly, establish and prosecute their claims against each other and that is the critical fact.**

*(Notes or Testimony-Motions in Limine, 9/23/15, pgs. 15-17, emphasis added)*[.]

Mr. Taylor, counsel, for Defendant <u>Pental Enterprises</u> likewise discussed the prejudice to [Appellees],

MR. TAYLOR: Your Honor, I'm William Taylor representing Pentel Enterprises. They were the rough carpenter and they installed the windows on this job. I want to just kind of support and bolster both Mr. Anastasia and Mr. Walsh's argument.

**You know, the mapping of water intrusion into a building it really takes expert know how. ...**

- 12 -

**Every expert involved in this case has said in one way or the other that a visual inspection, which was permitted with the parties and their experts, will not adequately explain how this water got into [Appellants'] home and which component was at fault** - which component of the exterior facade was at fault; the stucco, the windows, the roof.

The only way to be reasonably sure of the - of how this water entered would be to allow the experts to have this physical inspection when this remediation took place when the stucco was removed, the windows were removed, and that was not, you know, obviously given us - we were not given that opportunity.

**So, it's a critically important component for any construction forensics exam to have this physical exam. We just weren't given the opportunity. ...**

*(Notes of Testimony-Motions in Limine-9/23/15, pgs. 18-19, emphasis added)*[.]

Counsel Allison Perry discussed the prejudice to her client <u>Exterior Associates</u>.

MS. PERRY: ... **Another sort of trickle down effect** with -if this-if ... [**Appellants are**] **allowed to proceed with this claim is that they have somebody - ... on their side who was there and, you know, made personal firsthand observations and the jury will hear that. They're going to hear from all of our experts, oh, we relied on photographs,** we relied on documents, **and that in and of itself is prejudicial.**

With regard to my client that did the roofing and trim work, Mr. Campbell, who did the remediation work and who will testify at trial, he's not a roofing contractor. **He has no roofing experience. He**[**'s**] **not an expert in roofing, yet**

- 13 -

**he rendered certain opinions with regard to the work of my client.**

**Mr. Wheatley, their expert, then adopts those same opinions for the first time not included in his three prior reports and it's anticipated that at trial he will offer those opinions against my client.**

**We did not have the benefit of having anybody from our side kind of there to look firsthand in order to rebut those arguments.**

*(Notes of Testimony-Motions in Limine-9/23/15, pgs. 21-22)*[.]

Finally, the trial court correctly determined that a lesser sanction could not remedy the prejudice caused by [Appellants'] spoliation of the evidence herein. [Appellees] needed to physically inspect the affected area in order to identify the source of the water intrusion and defend the claims against them. [Appellants'] actions prevented such a physical inspection. Further, [Appellants] argue that the trial court should have continued the matter to have all experts do reports based solely on the photographs taken by them. This stilted option was clearly untenable, and would force [Appellees] to defend [Appellants'] claims with evidence solely of [Appellants'] choosing.

* * *

In the case at bar, [Appellants] had the burden of establishing the source/cause of the water intrusion in order to establish the elements of their claim. [Appellants'] own expert, Mr. Wheatley, could not render an opinion as to which [d]efendant or [a]dditional [d]efendant was responsible for the alleged defects in the home. Moreover, once the court issued its' spoliation sanction, [Appellants] were precluded from offering any such evidence against all [Appellees], thereby mandating the entry of summary judgment.

As defense counsel for subcontractor Wire Lathe, Inc., aptly argued,

- 14 -

MR. WALSH: So here we are. We're at the eve of trial and scheduled for trial at the end of this month and based upon the evidentiary record that is now before the [c]ourt, that being a record which is devoid of any evidence to show a water intrusion problem was caused by the action on the part of my client, and, in fact, on the part of any of the defendants or additional defendants, that [Appellants] did not meet [their] burden of proof at trial. [They] did not establish a prima facie case.

If you look at the commentary notes to 1035.2, it's almost a burden shift at that point in time. When we raised that argument in the context of a Motion for Summary Judgment, the burden then shifts to the party opposing the motion to put forth some sort of evidence for an evidentiary record that they can, in fact, prevail at trial in putting forth a prima facie case that they could survive essentially a nonsuit at trial.

Based upon the record, again, that's been produced – I'm not sure if you want to give [Appellants'] counsel some additional time - but I think his admission in court today is that he really doesn't have much of anything left in this case once you take out the water intrusion issue. ...

Based upon the [c]ourt's spoliation ruling that there could be no evidence of water intrusion as to any defendant or additional defendant, there's really nothing left of the case at that point. ...

*(Notes of Testimony 11/10/15, pgs. 38-39 and 40)*[.]

And, indeed, [Appellants'] counsel conceded, on the record, that there were no outstanding claims remaining.

MR. ONARATO: We responded previously, Your Honor. I mean, if you are to reinstate your Orders or issue your Orders on spoliation, then I think for the most part our case is done. Again, if you like, we can assess that and get back to you on that

> issue, but I think that that will cut the guts out of ninety-five percent of the case.
>
> THE COURT: How about I give you a week to let me know if there's anything else outstanding for some reason.
>
> MR. ONARATO: Okay. Thank you. We appreciate the opportunity.
>
> *(Notes of Testimony-Motion for Reconsideration/Summary Judgment 11/10/15, pg. 41)*[.]
>
> Despite an extended opportunity to do so, [Appellants] were ultimately unable to present outstanding claims/questions of fact thereby making the entry of summary judgment proper herein.

Trial Court Opinion, 6/2/16, at 5-13 (emphases in original, footnote omitted).

Indeed, it was Appellants' responsibility to preserve the areas of the alleged defects, and this responsibility was not relieved because of the lapse of time from the building of the home to the remediation. Further, the failure to preserve evidence was highly prejudicial to Appellees because the claim required inspection of the particular areas of water intrusion during remediation. Hence, the proper barring of evidence resulted in Appellants being unable to sustain their claims against Appellees. Accordingly, the trial court did not err in granting summary judgment.

To the extent Appellants claim that Appellees should have moved for sanctions before seeking summary judgment, we observe that Appellees moved for summary judgment pursuant to Pa.R.C.P. 1035.2. The Rules of Civil Procedure do not require a motion for sanctions before summary

judgment is sought.  ***See Wolloch v. Aiken***, 815 A.2d 594, 597-598 (Pa. 2002) (distinguishing discovery sanctions from summary judgment).  Thus, no relief is due.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/30/2017