985 A.2d 1259

### CITY OF PHILADELPHIA,

v.

### FRATERNAL ORDER OF POLICE LODGE NO. 5 (Jason BREARY).

Appeal of: Michael G. Lutz.

Supreme Court of Pennsylvania.

Argued Oct. 21, 2008.

Decided Dec. 29, 2009.

Stephen J. Holroyd, Philadelphia, Thomas W. Jennings, for Michael G. Lutz [FOP Lodge 5, (Breary) ].

Elise Michelle Bruhl, City of Philadelphia Law Department, for City of Philadelphia.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice BAER.

We granted allowance of appeal in this case to consider whether the Commonwealth Court expanded improperly the limited scope of review applicable to an Act 111[1] grievance

---

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. As discussed further, *infra,* Act 111 applies to grievances filed by unionized police officers and firefighters in the Commonwealth. While Act 111 precludes such police officers and firefighters from striking, the act was designed to guarantee swift resolution of grievances by establishing the ability of police officers and firefighters to bring their complaints before a neutral arbitrator, but permitting an appeal of an arbitration award (or denial thereof) pursuant only to the limited

arbitration by holding that an arbitrator violated the City of Philadelphia's procedural due process rights when the arbitrator precluded the City from presenting any evidence because of the City's failure to comply with a duly issued subpoena. After careful consideration, we agree with the Commonwealth Court that the arbitrator violated the City's due process rights. Thus, the Commonwealth Court did not err when it overturned the Act 111 award at issue herein, and accordingly, we affirm.

This case involves a male police officer for the City of Philadelphia, Jason Breary (Grievant). In June of 2001, a female police officer reported to the department that Grievant had sexually assaulted her. After the female officer reported the incident, the Philadelphia Police Department Internal Affairs Division (IAD) commenced an investigation into the accusations and, in the course of doing so, interviewed several members of the police department. At the conclusion of the investigation, IAD referred the matter to the Philadelphia District Attorney's office, which subsequently filed criminal charges against Grievant.

Concurrent with the filing of the criminal charges, the police department formally notified Grievant of the charges against him, gave him an opportunity to respond (which he declined to do), informed him that he was suspended without pay for thirty days, and that the department intended to terminate his employment. This notification was provided in the presence of Grievant's immediate superiors, the IAD investigator, and a representative from Appellant, the Fraternal Order of Police Lodge Number 5 (FOP). Consistent therewith, Grievant was terminated on December 13, 2002. The FOP, on behalf of Grievant, and pursuant to the Collective Bargaining Agreement (CBA) between the City and the FOP, appealed the termination to a neutral arbitrator from the American Arbitration Association (AAA). The FOP contended that the termi-

standard of narrow *certiorari, i.e.,* an appeal will only lie to examine (1) a question of jurisdiction; (2) the regularity of the arbitration proceeding; (3) questions of excess in the exercise of an arbitrator's powers; and (4) constitutional questions. *See e.g. Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 656 A.2d 83 (1995).

nation was without cause and thus violative of the CBA. The grievance was then held in abeyance, pending final disposition of the criminal charges filed against Grievant.

■ The Philadelphia Municipal Court convicted Grievant of all charges filed against him on September 2, 2003. Grievant filed an appeal demanding a trial *de novo* in the Philadelphia County Court of Common Pleas. That court, on July 28, 2005, found Grievant not guilty on all charges, thus terminating all criminal action against him. Subsequently, a notice of hearing before the AAA was issued to both the FOP and City, setting the grievance arbitration hearing for July 10, 2006.[2] On May 18, 2006, the arbitrator, pursuant to a request by the FOP, issued a subpoena requiring the City to provide:

[A]ny and all documents relating to the discipline imposed upon [Grievant], including but not limited to, Forms 75–18, investigation reports, citizen complaints, witness statements, Notices of Disciplinary Action (Suspension, Intent to Dismiss and Dismissal), documents reflecting actions taken by and recommendations made by the Police Board of Inquiry ("PBI"), transcripts or tape recordings of proceedings before the PBI, and all other documents that refer or relate in any way to the aforementioned discipline.

The FOP demanded that the subpoenaed documents be produced by the July 10 hearing.[3]

The City arrived at the hearing with eight witnesses to present during its case-in-chief, but without the demanded documents. Counsel for the FOP informed the arbitrator of the City's failure to honor the FOP's subpoena. The deputy

2. Act 111 provides for two different types of arbitration: "interest arbitration" and "grievance arbitration." "Interest arbitration is the arbitration which occurs when the employer and employee are unable to agree on the terms of a collective bargaining agreement. In contrast, grievance arbitration is the arbitration which occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 595 Pa. 47, 938 A.2d 225, 227 n. 1 (2007) (internal citations and quotations omitted).

3. Pursuant to 43 P.S. § 217.6, Act 111 arbitrators "have the power . . . to compel the attendance of witnesses and physical evidence by subpoena."

City Solicitor representing the City responded that he was unaware of the document requests. The FOP then orally petitioned the arbitrator to sanction the City by precluding the presentation of any evidence that would have been provided pursuant to the subpoena.

The arbitrator *sua sponte* continued the matter until July 25, 2006, and indicated that he would hear oral arguments on the record, concerning the sanctions when the hearing resumed.[4] Meanwhile, counsel for the City discovered that the subpoena had not been complied with due to a clerical error, and immediately transmitted all of the subpoenaed documents in the City's possession to Grievant.[5] When the arbitration resumed on July 25, the arbitrator first heard oral arguments, on the record, concerning the FOP's motion for sanctions.

During arguments, the FOP averred that, given the internal nature of disciplinary proceedings in the Philadelphia Police Department, when a grievance is filed to challenge an officer's termination or suspension, the City, at least initially, retains sole and exclusive possession of the relevant documents, reports, and transcripts. The FOP submitted that, while prior practice had formerly been to request documents and the like informally through correspondence addressed to the City, the City had recently changed its stance regarding arbitration discovery, and was requiring subpoenas for all information. Despite the City's change in position, the FOP contended that, in this case, as well as other Act 111 arbitrations between the parties, the City had continuously refused to comply with formal discovery requests.

The FOP then argued that, given the finality of Act 111 arbitration, "it is absolutely and positively critical that the City

4. It appears that Act 111 arbitration hearings between the City and FOP are normally conducted without the presence of a stenographer. In fact, the initial July 10 hearing was not transcribed. Thus, this Court was constrained to rely upon the briefs and opinions below in construing this history. However, by specific order of the arbitrator, the July 25 hearing was transcribed, and we have the benefit of that transcription.

5. Thus, the FOP had the subpoenaed documents for approximately two weeks prior to the hearing's resumption on July 25.

comply with requests for documentation." Notes of Testimony (N.T.), Jul. 25, 2006, at 8. The FOP contended that its members suffer extreme prejudice when the FOP is forced to defend them without the discovery that is their right as a matter of basic due process. To stop these abuses from happening repeatedly, the FOP asserted, the arbitrator should preclude the City from presenting any testimony or evidence based on materials subject to the subpoena.

The City countered that, based upon the clerical error,[6] counsel had no knowledge of the subpoena until the July 10 hearing, and upon being told of it, immediately corrected the problem. The City further stated that there had been settlement negotiations in the weeks leading up to the July 10 hearing, and the FOP's counsel made no mention of the failure to comply with the subpoena. Moreover, the City argued the FOP could have filed a motion to enforce the subpoena with the Philadelphia Court of Common Pleas prior to the hearing, rather than waiting, then asserting prejudice, and requesting the imposition of severe sanctions. The City then noted that neither the FOP nor Grievant had been prejudiced by the error given that the FOP received the documents two weeks before the July 25 merits hearing, rather than on July 10, as it had originally requested. Accordingly, while acknowledging the error, the City contended that preclusion of all evidence subject to the subpoena would amount to a constructive dismissal of the arbitration, and was not a proper remedy.

The arbitrator disagreed and granted the FOP's request that the City be precluded from presenting any evidence that was subject to disclosure under the subpoena. While recognizing that the deputy City Solicitor was unaware of the subpoena until the July 10 hearing and that counsel diligently cured the problem immediately thereafter, the arbitrator found that the Grievant had sustained prejudice because he was seeking reinstatement to the police force and the delay in the proceedings had slowed this quest. Moreover and impor-

6. It is undisputed that the "clerical error" consisted of an administrative professional in the City Solicitor's office misplacing the subpoena after it had been served on the City.

tantly, the arbitrator further faulted the City for alleged noncompliance in other Act 111 arbitrations before different arbitrators and involving different attorneys from the City Solicitor's office. The arbitrator did not find any bad faith on the City's part specific to this case, but nevertheless stated that in his experience, the FOP has had significant compliance problems with the City in the past, and that the City should not be permitted to ignore subpoenas, regardless of its good or bad faith. N.T., Jul. 25, 2006, at 30.

Prohibited from presenting any evidence that had been sought through the subpoena, the City had no case and was forced to rest. Grievant then rested, and the arbitrator, in a written opinion issued October 2, 2006, sustained the grievance and reinstated Grievant to the police force with all back pay, holding that the City had not met its burden of proving just cause for dismissal.

The City filed a Petition to Vacate Arbitration Award with the Philadelphia County Court of Common Pleas. In a one-sentence order, the court denied the petition. In a footnote to the order, the court indicated that because the arbitrator had not exceeded his authority, it possessed no authority to disturb the sanction order against the City, or the resulting arbitration award. Tr. Ct. Slip Op. at 1–2 n. 1 (citing *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995), *supra* note 1). The City then appealed to the Commonwealth Court.

In a published opinion, *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Jason Breary)*, 932 A.2d 274 (Pa.Cmwlth.2007), a panel of the Commonwealth Court unanimously vacated the order of the Court of Common Pleas and remanded for a full arbitration. Initially, the court determined that the ability of the arbitrator constructively to dismiss the City's case by precluding the subject evidence raised due process concerns, permitting substantive review within the limited confines of narrow *certiorari*. *Id.* at 280 (*citing Betancourt, supra* note 1). The court then examined whether a procedural due process violation actually occurred. In so doing, it found "troubling" that the arbitrator denied a

full merits hearing, "in large measure, because of violations that have occurred in *other* cases." *Id.* at 286 (emphasis in original). Moreover, the court noted that, while Grievant (and the FOP) sustained some prejudice, it had been cured when the City provided the requested documents immediately following the July 10 hearing, providing Grievant and FOP two weeks to study the documents and prepare for the hearing, when the FOP had only sought the documents on the day of the originally scheduled hearing. In the end, the Commonwealth Court found that the sanction of complete preclusion of evidence equating to a dismissal of the City's case, was a violation of due process, and thus ordered the remand for a full arbitration hearing.

The FOP filed for allowance of appeal to this Court, requesting that we resolve whether the Commonwealth Court improperly expanded the limited scope of review in Act 111 grievance arbitrations, as articulated in *Betancourt*, when it vacated the arbitrator's determination and remanded for a hearing below. We granted review to decide this question, and concomitantly directed the parties to address whether Act 111 arbitrators, in the first instance, "can award such sanctions, and, if so, what is a reviewing court's role in reviewing sanctions under the Act 111 narrow *certiorari* scope of review?" *See City of Phila. v. Fraternal Order of Police Lodge No. 5 (Jason Breary)*, 595 Pa. 403, 938 A.2d 986 (2007) (*per curiam*).

Prior to 1968, police officers and firefighters in the Commonwealth had no legal ability to unionize or collectively bargain. In response to a number of illegal strikes throughout the Commonwealth, the General Assembly enacted Act 111 of 1968, *see supra* note 1, which gave police officers and firefighters the ability to unionize and collectively bargain, but at a price: the newly permitted unions would continue to possess no power to strike. The Legislature assured, however, that labor disputes between political subdivisions and the police and fire unions would be resolved quickly and with finality by providing no right of appeal from final disposition of an Act 111 arbitration. 43 P.S. § 217.7(a).

■■■■ We have since recognized, however, that all decision-making tribunals, including arbitrators, must conduct proceedings in accordance with the mandates of due process under the Pennsylvania and United States Constitutions. *The Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437, 440 (1969). Act 111 arbitration panels, however, are not administrative agencies or courts. *Id.* Rather, they are bodies of temporary jurisdiction convened to respond quickly and with absolute finality to a specific labor conflict, and then disperse. *Id.* Like trial courts, however, arbitration panels have the potential to affect the substantive and fundamental rights of parties. Thus, and notwithstanding Section 217.7(a), in an Act 111 interest arbitration case, an appeal of an award will lie in the nature of narrow *certiorari,* only to review: (1) a question of jurisdiction; (2) the regularity of the proceedings; (3) questions of excess in the exercise of powers; and (4) constitutional questions. *Betancourt,* 656 A.2d at 89–90; *Washington Arbitration Case,* 259 A.2d at 441. "Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow *certiorari,* thus allowing for non-deferential review." *Town of McCandless v. McCandless Police Officers Ass'n,* 587 Pa. 525, 901 A.2d 991, 1000 (2006). We are bound, however, by all determinations of fact and issues of law not encompassed by the standard of narrow *certiorari,* even if incorrect. *Id.* Only if we first determine that narrow *certiorari* is implicated, may we then examine the viability of the issued sanction.

Instantly, the FOP claims that the arbitrator's decision to preclude the City from presenting any evidence subject to the subpoena cannot be assailed on appeal because the decision constitutes a mere evidentiary ruling, not encompassed by narrow *certiorari* under *Betancourt.* Citing to *Betancourt, The Washington Arbitration Case,* and Act 111 itself, the FOP emphasizes that these arbitration hearings are to be swift, and result in the final resolution of all grievances. Thus, the FOP argues that to enable the City to challenge simple "evidentiary rulings," and, further, to permit the Commonwealth Court to

overturn those rulings, disrupts the clear deference that Act 111 arbitrators are due. Indeed, the FOP argues that if the evidentiary decision of the arbitrator in this case is assailable, then any mundane, procedural decision of an arbitrator will be impermissibly subject to judicial scrutiny. In support of this point, the FOP points to a multitude of federal cases, including decisions from the National Labor Relations Board, for the proposition that an "arbitrator ... has the responsibility and the authority to control the conduct of the proceedings and the admission of evidence." Brief of the FOP at 26 (quoting *Int'l Union, United Automobile, Aerospace & Agric. Implement Workers of America v. Kraft Foods*, 409 F.Supp. 559, 562 (E.D.Pa.1976)). The FOP contends that, similar to federal arbitration proceedings, Act 111 arbitrators must inherently make certain evidentiary rulings, *i.e.*, relevancy, hearsay, and the like, during the course of a hearing. It avers that the arbitrator's preclusion of the City from presenting evidence due to the discovery violation is no different. Therefore, the FOP argues that the arbitrator's imposition of the discovery sanction is not reviewable via narrow *certiorari*.

Should we find the imposition of the sanction reviewable, the FOP alternatively contends that the arbitrator's decision to prohibit the City from presenting the subject evidence fell within all bounds of due process, as all that transpired was that the City ignored a duly issued subpoena, and was sanctioned for the transgression. Further, the FOP avers that it and Grievant were significantly prejudiced by the City's non-compliance, in light of the inability to prepare for the July 10 hearing, and because any further delay in the proceedings delayed Grievant, whose criminal conviction had been overturned, from reclaiming his position on the police force. Indeed, the FOP and Grievant contend that such prejudice outweighed the prejudice the City suffered when it was precluded from adducing evidence, resulting in the constructive dismissal.[7]

7. The FOP further contends that the City's claim that its case was constructively dismissed through the preclusion of evidence is incorrect. Rather, according to the FOP, the City could have presented the

The City counters that by completely precluding it from presenting any argument or evidence at the July 25 hearing, the arbitrator unconstitutionally deprived it of its due process rights under the Pennsylvania and United States Constitutions, as well as the rules promulgated by the AAA.[8] The City takes umbrage with the FOP characterizing what occurred here as an evidentiary question, pointing out that within the context of the sanction, the arbitrator precluded the City from putting on the witness stand the eight witnesses it had prepared and brought to the hearing, and forced the dismissal of the City's case against the Grievant. The City protests that the hallmark of due process is a full and fair opportunity to be heard, and the dismissal of a case is such an extreme sanction as to violate due process. The City argues that the arbitrator should have "balance[d] the equities carefully and dismiss[ed] only when the violation of the discovery rules is willful and the opposing party has been prejudiced." Brief of the City at 34 (quoting *Stewart v. Rossi*, 452 Pa.Super. 120, 681 A.2d 214, 217 (1996)). To that end, the City contends that the arbitrator did not find any willful misconduct on its part. The City further strongly objects to the FOP's and Grievant's contention that they were prejudiced. As noted above, the City believes that by receiving the subpoenaed materials two weeks prior to the hearing, Grievant and FOP were, in fact, benefitted. Thus, the City contends it properly raised a due process question cognizable under narrow *certiorari*, and that there was, in fact, a violation of due process. Thus, the City avers the

IAD investigator to testify concerning what he concluded from his investigation, as well as Grievant. This contention, however, is belied by the plain language of the subpoena, which instructed the City to turn over to the FOP "[a]ny and all documents relating to the discipline imposed upon [Grievant]," and the arbitrator's ruling to preclude all evidence subject to that subpoena. As the City states, the IAD investigator's report, as well as any statements made by Grievant to IAD, clearly fall within the auspices of both the subpoena and subsequent sanction.

8. *See* AAA Rule 26 ("The arbitrator may vary the normal procedure under which the initiating party first presents its claim, but in any case shall afford full and equal opportunity to all parties for the presentation of relevant proofs."); Rule 28 (providing for the opportunity for all parties to present all evidence deemed relevant by the arbitrator).

Commonwealth Court properly reversed and remanded for a full hearing, and this Court should affirm.

■ First regarding the threshold inquiry of narrow *certiorari*, our review of the record reveals that the issue presently before us is one involving procedural due process such that *Betancourt* is satisfied, as this is a properly reviewable constitutional matter.[9] As discussed above, the FOP attempts to characterize the arbitrator's decision as nothing more than an "evidentiary ruling to exclude certain evidence," akin to a ruling concerning hearsay or relevancy. Brief of the FOP at 21. Moreover, the FOP continues, should we affirm the Commonwealth Court, we would be subjecting every Act 111 arbitrator's decisions and rulings to unfettered judicial review, in clear violation of *Betancourt* and narrow *certiorari*.

Initially, we recognize the FOP's concern: arbitrators must decide evidentiary questions such as hearsay and relevancy; and, the exclusion of evidence pursuant to such a ruling does not typically involve notions of due process. However, the instant case does not concern a simple "evidentiary ruling." Indeed, the FOP's characterization of the subject ruling as one involving evidence is inaccurate; the arbitrator did not rule upon a relevancy, best evidence, or hearsay objection. Rather, the arbitrator decided a technical discovery issue, and in the process, constructively precluded[10] the City from present-

9. As noted previously, a plenary standard of review governs this preliminary determination of whether an issue implicates the four areas of review pursuant to narrow *certiorari*. *Town of McCandless*, 901 A.2d at 1000. Moreover, as the thrust of both parties' arguments sound exclusively in procedural due process, we do not examine whether the other three areas of narrow *certiorari*, jurisdiction, regularity of the proceedings, and excess of use of powers, are present.

10. We use the phrases "constructively precluded" and "constructively dismissed" throughout the body of this opinion because we recognize that the arbitrator's ruling did not mandate actual dismissal of the arbitration. As has already been discussed, and will be further examined, however, we conclude that this ruling left the City with no case to present following the arbitrator's ruling. In that vein, and contrary to the view espoused by Mr. Justice McCaffery, we perceive this order to be all-encompassing as concerns the City's case-in-chief, and not merely an order that prohibited the City from presenting an expert witness or a

ing a case-in-chief concerning the merits of Grievant's termination. While we recognize that dismissal of a civil action is, at times, a remedy available to rebuke those who violate discovery orders, *see Fox v. Gabler,* 534 Pa. 185, 626 A.2d 1141 (1993),[11] here, the arbitrator found no willful misconduct or bad faith on the City's part, and further seemingly relied on evidence not of record in this specific arbitration to support his ruling. In our view, then, this posture raises a question in our minds as to whether the City was afforded a fair opportunity to be heard. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (holding that while due process is accorded when litigation is terminated for a party's "failure to comply with a reasonable procedural or evidentiary rule," procedural due process still "does require, however, . . . an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case.") (internal citations and quotations omitted).

■ Accordingly, while we agree with the FOP that review of a simple "evidentiary question" would run far afield of narrow *certiorari,* the heart of this matter concerns the propriety of an extreme discovery sanction precluding further action in this case, and, therefore, a valid constitutional claim involving the most basic of rights: due process of law. Thus, pursuant to *Betancourt,* we find that we may examine whether the arbitrator's discovery sanction, which constructively precluded the City from presenting a case-in-chief, violated the City's right to procedural due process.[12, 13]

piece of evidence, which would most certainly fail to implicate the due process concerns raised herein.

**11.** The decision in *Fox* is discussed more fully, *infra.*

**12.** Mr. Justice McCaffery, in disagreeing with this initial finding, declares that our review under narrow *certiorari* cannot be implicated in a situation where a party "forfeited its opportunity" to a fair hearing "through its own action." Dissenting Op. at 297, 985 A.2d at 1277 (McCaffery, J.). This viewpoint, however, incorrectly requires a party, like the City (or, indeed, an aggrieved police officer) first to prove a constitutional violation in order for an appellate court then to review a case under *Betancourt.* Such a requirement is wholly improper under our Act 111 jurisprudence, as review of an Act 111 arbitration involves

Generally, courts [14] are afforded great discretion in fashioning remedies or sanctions for violations of discovery rules and orders. *See e.g. Fox*, 626 A.2d at 1143 (Pa.1993); Pa. R.C.P. No. 4019 (setting forth circumstances when discovery sanctions may be imposed and the type of sanction orders available to a court). Indeed, even where a trial court "imposes a judgment by default . . . as a sanction for failure to respond adequately to discovery requests, it is acting well within its discretion and the latitude given it by our Rules of Civil Procedure to enter a judgment by default against the disobedient party." *Fox*, 626 A.2d at 1143 (internal quotations omitted); *see also* Pa. R.C.P. No. 4019(c)(3) (allowing for an order "entering a judgment of non pros or by default against the disobedient party or party advising the disobedience" of a discovery order). Notwithstanding those general propositions, we highly disfavor dismissal of an action, whether express or constructive, as a sanction for discovery violations absent the most extreme of circumstances. *Calderaio v. Ross*, 395 Pa. 196, 150 A.2d 110, 112 (1959); *see also Pride Contracting, Inc. v. Biehn Constr., Inc.*, 381 Pa.Super. 155, 553 A.2d 82, 84 (1989) (citing *Calderaio* ).

a two-step process: (1) using plenary review (while simultaneously accepting any findings of fact by an arbitrator) to determine whether one of the four areas of law, which comprise narrow *certiorari*, exist within the case; and (2) if such a question exists, then examining the record in the proper light to answer that question so implicated (in this case, whether the arbitrator violated the City's constitutional rights). Indeed, we could certainly review an arbitration award where we find a properly raised constitutional question, such that our review is proper under *Betancourt*, while ultimately holding that no constitutional violation occurred.

13. Having determined that this case presents a constitutional question, we note that our standard of review of constitutional questions is *de novo*, and our scope of review plenary. *See Pocono Manor Investors, LP v. Pa. Gaming Control Bd.*, 592 Pa. 625, 927 A.2d 209, 219 (2007).

14. Again, we recognize that, "whatever else it is, an arbitration panel certainly is not a court." *Washington Arbitration Case*, 259 A.2d at 440 n. 3. Regardless, and like trial courts, arbitrators must adhere to the doctrines of procedural due process when fashioning Act 111 awards. *Id.* at 440. Thus, we find the precedent concerning review of a trial court's discovery sanction order to be instructive to the circumstances presented instantly.

██ Of course, considerations of due process foster this Court's hesitancy to endorse complete preclusion of a party's evidence or litigation in light of a discovery violation. As the Supreme Court of the United States has oft-stated, parties are technically deprived of their procedural due process rights under the Fourteenth Amendment when they are not afforded full opportunities to present evidence before a court. *See e.g. Logan; Butler Bros. v. McColgan,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942); *Saunders v. Shaw,* 244 U.S. 317, 37 S.Ct. 638, 61 L.Ed. 1163 (1917). Identical considerations must be given under Article I, Section 1 of the Pennsylvania Constitution as well. *See Nixon v. Commonwealth,* 576 Pa. 385, 839 A.2d 277 (2003); *Pa. Game Com'n v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995). Accordingly, all tribunals, whether trial courts, administrative agencies, or Act 111 arbitrators, must carefully weigh multiple aspects of a case before concluding that dismissal of an action, whether explicitly or constructively through the exclusion of evidence, is a proper remedy for a discovery violation.

██ This Court has never opined upon the specific factors that a trial court (or, for that matter, appellate courts on review) should consider before concluding that dismissal of a case for a discovery violation constitutes a proper remedy. Nevertheless, in considering sanctions for noncompliance with other pre-trial procedural rules, we have "noted that enforcement of procedural rules is governed by the facts and circumstances of each particular case." *Miller v. Brass Rail Tavern, Inc.,* 541 Pa. 474, 664 A.2d 525, 532 n. 5 (1995) (citing *Feingold v. Southeastern Pa. Transp. Auth.,* 512 Pa. 567, 517 A.2d 1270 (1986)). Specifically, in *Feingold,* a case involving the exclusion of expert testimony for a party's failure to name the expert in its pre-trial statement, we delineated the principal considerations a trial court should examine when deciding whether exclusion of the expert's testimony would be proper:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses

would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith [or] willfulness in failing to comply with the court's order.

*Feingold,* 517 A.2d at 1273.

While our jurisprudence in this area is somewhat limited, the Superior Court has had the opportunity to develop and apply four similar factors that it concludes trial and appellate courts alike should examine before determining the general severity and vitality of a discovery sanction: (1) the prejudice, if any, endured by the non-offending party and the ability of the opposing party to cure any prejudice; (2) the noncomplying party's willfulness or bad faith in failing to provide the requested discovery materials; (3) the importance of the excluded evidence in light of the failure to provide the discovery; and (4) the number of discovery violations by the offending party. *See e.g. Pioneer Commercial Funding Corp. v. Amer. Financial Mortg. Corp.,* 797 A.2d 269 (Pa.Super.2002), *rev'd on other grounds,* 579 Pa. 275, 855 A.2d 818 (2004); *Steinfurth v. LaManna,* 404 Pa.Super. 384, 590 A.2d 1286, 1288–89 (1991); *see also Wolloch v. Aiken,* 572 Pa. 335, 815 A.2d 594, 597 n. 3 (2002) (citing *Steinfurth* as setting forth factors a trial court should consider when responding to a motion for sanctions under Pa. R.C.P. No. 4019.). In applying these factors to appeals where a trial court dismissed an action for noncompliance with a discovery order, the Superior Court has consistently placed greater emphasis on the first two factors: (1) the prejudice to the non-offending party and the ability to cure that prejudice; and (2) the willfulness of the offending party's conduct. *See e.g. Stewart v. Rossi,* 452 Pa.Super. 120, 681 A.2d 214, 217 (1996) (holding that because "dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only when the violation of the discovery rules is willful and the opposing party has been prejudiced.").

We find the jurisprudence of the Superior Court in this area to be consistent with the precedent of this Court. Accordingly, we adopt the aforementioned four factors as the proper

standard for evaluation of the severity and, ultimately, the vitality, of a discovery sanction. We thus proceed to examine the arbitrator's constructive dismissal of the City's case under these four factors.[15]

First, we examine what prejudice, if any, the FOP suffered because of the City's noncompliance, and if the City cured that prejudice. Initially, we note that there is no doubt that a discovery violation by the City occurred; the City concedes as much. As already established, the arbitrator issued a subpoena, and the City failed to produce the duly requested materials by the July 10 deadline for providing them. As a result of this noncompliance, the arbitrator found that the FOP and Grievant were prejudiced by the violation in two ways. First, the City prevented Grievant and the FOP from preparing their case for the July 10 arbitration hearing by failing to turn over the requested materials, reasoning that until the City turns over such evidence, it remains in exclusive control thereof. Moreover, the arbitrator concluded that Grievant and the FOP sustained prejudice due to the "substantial backlog of well over 200 grievances pending before arbitration. Therefore[,] to grant additional time in order to prepare and eventually reschedule a hearing would further prejudice [Grievant] by forcing him to encounter more ... delays in resolving this matter." Arbitration Award Op. at 6.

Nevertheless, as ably observed by the Commonwealth Court, the City cured any prejudice that arguably may have occurred immediately following conclusion of the July 10 hearing. As discussed *supra,* the subpoena contained a compliance date of July 10 and, accordingly, the City could have fully complied with the subpoena by simply providing the requested items to the FOP in the moments prior to the commencement of the hearing. Upon being informed of its inadvertent noncompliance, the City immediately provided the requested documents to the FOP. With the hearing continued until July 25,

15. While we recognize this appeal involves an arbitration award issued pursuant to Act 111, once we accept consideration of an issue pursuant to *Betancourt,* the posture of the appeal becomes identical to that of an appeal from a trial or intermediate appellate court.

the FOP had an additional two weeks to prepare its case. The FOP thus received more time to prepare its case than it would have received had the City provided the documents on the subpoena's due date. The FOP's second averment of prejudice is that Grievant's ultimate return to this police officer position was delayed by the continuance. However, that continuance was two weeks, and obviously of no significance in the scheme of this case. Thus, we conclude that no real prejudice resulted from the City's discovery violation.

■■■ Next, we consider whether the City willfully, or in bad faith, withheld the requested documents from the FOP. On that point, while the FOP attempts on numerous occasions in its brief to characterize the City's actions as "willful," the arbitrator declined to make such a finding. Our independent review of the record fully supports the arbitrator's conclusion that the City did not act willfully, or in bad faith, in failing to provide the requested discovery. Indeed, there is ample support for the arbitrator's holding in this regard: the FOP conceded that the subpoena inadvertently "sat on a secretary's desk," N.T., Jul. 25, 2006, at 11, and that the noncompliance was the result of a "clerical error." *Id.* at 23. Further, the deputy City Solicitor supplied the subpoenaed documents promptly upon being informed of the inadvertent noncompliance. Thus, we find no willful misconduct on the City's part.

■■■ Third, we examine the importance of the excluded evidence (which constituted the City's entire case) in light of the failure to provide the requested materials. There is no question that the evidence at issue was vitally important to both the City and the FOP. We further recognize the arbitrator's finding that the FOP was hampered in the preparation of its case for the July 10 hearing because of the City's noncompliance. Notwithstanding this, the City, which bore the burden of proving just cause for Grievant's termination, clearly had no other alternative but to rest its case once the arbitrator precluded the entry of any evidence or testimony subject to the terms of the subpoena. While the FOP argues that the City had other options to present its case—namely calling the

IAD investigator and Grievant—as already noted, this contention is contradicted by the very language of the subpoena and the sanction imposed by the arbitrator. *See supra* note 7. The subpoena requested all documents subject to the investigation; surely, the IAD investigator and Grievant would both have testified to matters covered by the subpoena and subsequent sanction. Thus, we conclude that the evidence that was excluded was critical to the City's ability to present a case.

Finally, we analyze the number of discovery violations by the City. To that end, the FOP contends that the City has violated discovery orders in other Act 111 cases, and we should draw upon such alleged misconduct to reinstate the sanctions imposed by the arbitrator instantly. Indeed, the arbitrator seemingly used these prior violations as a basis for his decision: "For quite some time there was a controversy which it was alleged that the City had failed to turn over customary documents and evidence. *As a result six prior arbitrators have at least expressed their displeasure or have ruled against the City.*" Arbitration Award Op. at 4 (emphasis added). The City counters, however, that such supposed noncompliance by it in other Act 111 arbitrations, involving different counsel, arbitrators, grievants, facts, and circumstances, has no relevance here.

While the test we adopt today recognizes the importance of not condoning repeated misconduct, *see Steinfurth,* 590 A.2d at 1288 ("[W]e consider the number of discovery violations. Repeated discovery abuses are disapproved."), we agree with the City that we cannot take into account alleged violations from other cases and circumstances here for several reasons. First, our independent review of the record reveals that the FOP referenced these alleged incidents of noncompliance baldly to the arbitrator during the arguments over the motion for sanctions. The FOP, however, did not introduce testimony or other evidence supporting the substance or circumstances of these alleged violations. Moreover, as noted above, Act 111 arbitrations are normally conducted without the benefit of transcription and, with the FOP entering no substantive evi-

dence to support its claims in this case, there is simply no record or evidence for this Court to review.

Moreover, we cannot fault the City for not being prepared to counter the accusations of misconduct from unrelated arbitrations during the July 25 hearing. Analogous to this circumstance, in the *Staff Inspector Appeal*, 564 Pa. 290, 768 A.2d 291 (2001), an Act 111 arbitration case involving these same parties, we found error on an arbitrator's part for placing the City "on notice" concerning a specific argument merely because that argument had been raised by the FOP against the City in prior arbitrations. There, the FOP filed for arbitration concerning the City's elimination by attrition the position of staff inspector.[16] On the date of the hearing, the FOP then attempted to litigate whether the captains who had been performing the staff inspector duties were entitled to an "out-of-class" pay award, an issue that supposedly had been litigated in previous arbitrations. The arbitrator permitted the issue to be litigated, but we reversed, rejecting

the notion that the City was somehow 'on notice' that the out-of-class pay claim was at issue in this matter simply because the FOP had specifically raised such a claim in earlier demands for arbitration which were separate from and unconsolidated with the instant matter. [. . .] It would be illogical to conclude that the City was somehow on notice not only as to those claims actually raised in the demand for arbitration, but also as to any other claims that the FOP has raised in the past.

*Id.* at 295 n. 3.

We find that the same logic, or perhaps better stated, "illogic," applies here. While it may certainly be true that discovery disputes between the City and the FOP have existed in the past and may continue into the future, we again cannot expect the City to have been prepared to litigate fully discov-

16. A staff inspector was an officer with a rank higher than captain, but below inspector, who investigated special and important claims of misconduct against fellow officers. Through attrition, the City had begun to eliminate the staff inspector position, and captains within the department had been forced to perform the investigations formerly conducted by staff inspectors.

ery violations that have occurred in past arbitrations at the July 25 hearing. Thus, under this fourth prong of the above noted test, as to this arbitration, it is undisputed that only a single discovery violation occurred, rather than a number of violations over the course of the entire litigation. *Cf. Stewart*, 681 A.2d at 217–218 (finding a litigant's actions constituted "egregious" violations of the rules of discovery when the litigant failed to provide adequate responses to discovery requests over a period of several years).[17]

Thus, for the reasons set forth herein, given application of the four-factor test, we agree with the Commonwealth Court that the arbitrator, under the circumstances of this case, violated the procedural due process rights of the City. In particular, regarding the prongs of prejudice and willful misconduct, while the FOP and Grievant arguably suffered prejudice by the City's failure to comply with the subpoena, we find of great import that such prejudice was sufficiently cured by the City's subsequent actions and that no willful misconduct occurred on the part of the City. *See Stewart*, 681 A.2d at 217. Again, the FOP was afforded an additional two weeks to prepare for the arbitration once the subpoena was complied with, and the arbitrator, despite the FOP's assertions to the contrary, did not find any willful misconduct or bad faith on the City's part. Further, the excluded evidence consisted of the City's entire case-in-chief, thus the arbitrator's action constructively dismissed the grievance entirely. Finally, the City did not repeatedly violate discovery orders as they pertained to this arbitration. Rather, a sole transgression oc-

17. The FOP may not, however, be without a remedy to counteract the City's alleged management of document requests. If there is any basis to the allegations of repeated misconduct (and we reiterate that we hold no opinion on the veracity of such allegations, as no record in this regard was developed), and further if the CBA between the parties so provides, it may well be that the FOP can file a separate grievance arbitration to litigate the City's failure to comply with requests for documents, whether informal or formal. Certainly, then, the parties would be on full notice concerning the FOP's allegations of repeated contractual violations, and the issue may be fully resolved. Additionally, should there not be a basis for such grievance in the agreement between the FOP and the City, the FOP could make this the subject of collective bargaining.

curred, which the City immediately cured after recognizing the mistake. Accordingly, we agree with the Commonwealth Court that the City was improperly denied due process.

In so holding, we reiterate, however, that we in no way approve of a challenge to sundry rulings by an arbitrator on due process grounds. To be sure, the unique circumstances of this case epitomize the very reason narrow *certiorari* review in Act 111 cases is permitted: to remedy a clear procedural due process violation. The opinion and order of the Commonwealth Court are affirmed.[18]

Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, TODD and GREENSPAN join the opinion.

Justice EAKIN files a dissenting opinion in which Justice McCAFFERY joins.

Justice McCAFFERY files a dissenting opinion.

Justice EAKIN, dissenting.

I respectfully dissent, as I disagree with the majority's characterization of the Act 111 arbitrator's sanction as a constitutional due process violation. Act 111 was designed to ensure timely resolution of grievances by police officers and firefighters; thus, the Act only permits appeals from an arbitrator's decision under very limited circumstances. *See Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83, 89 (1995) (swift resolution of labor disputes decreases chance public safety workforce will be destabilized by protracted litigation; legislature's intent was to prevent Act 111 arbitration awards from miring down in litigation). Permitting a party to challenge what amounts to a routine evidentiary ruling is to thwart Act 111's purpose.

18. In light of our disposition of this appeal on constitutional grounds, we need not address the ancillary question of whether Act 111 arbitrators may, in the first instance, impose discovery sanctions.

Here, the arbitrator imposed a sanction on the City for its admitted discovery violation; the sanction was the preclusion of evidence not turned over as required. The fact that this ruling excluded all the City's evidence reflects only the fact that the City failed to provide the entirety of its evidence in the first place. That is, the de facto magnitude of the remedy mirrors the de facto magnitude of the City's failure—the scope of the ruling is simply commensurate with the violation, regardless of the consequence to the City's case. That consequence does not alter the ruling's nature; it was a decision pertaining to the admission or exclusion of evidence, which is within the arbitrator's discretion. *See AFSCME District Council 88 v. County of Lehigh,* 798 A.2d 804, 808 (Pa.Cmwlth. 2002).

Classifying such a ruling as one of constitutional magnitude because the City withheld all its evidence is to allow the tail to wag the dog; an evidentiary ruling does not become a due process matter simply because its encompassing scope matches the encompassing nature of the violation. To allow such challenge to an arbitrator's sanction, even under these circumstances, disrupts the deference Act 111 arbitrators' decisions are due, *see* 43 P.S. § 217.7(a) ("No appeal therefrom shall be allowed to any court."), and will result in awards being mired down by challenges to routine rulings.

I appreciate the City's ultimate compliance, but the question before this Court is the scope of review, not the equities of the ruling. Accordingly, I would hold *Betancourt* does not authorize narrow *certiorari* review of the arbitrator's evidentiary sanction. I would reverse the Commonwealth Court's order remanding for full arbitration, and would reinstate the arbitrator's decision sustaining the grievance and reinstating the grievant to the police force.

Justice McCAFFERY joins this dissenting opinion.

Justice McCAFFERY, dissenting.

I must respectfully dissent.

My initial and most fundamental disagreement with the majority's opinion is in its characterization of the arbitrator's sanction as a constitutional matter rather than as a basic evidentiary one. Contrary to the majority, I would hold that the Act 111 arbitrator simply imposed a sanction **within his discretionary authority,** after having weighed the evidence before him regarding the City's present and past failures to honor duly issued subpoenas, and after having made factual findings that are beyond any court's review. Pursuant to the clear dictates and intent of Act 111, such **discretionary** sanction is a final, non-appealable determination of the arbitrator and not reviewable under our narrow *certiorari* scope of review.

Due process, for our purposes, simply requires "an *opportunity* ... granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (emphasis in original; citations and internal quotation marks omitted). *Logan,* a case relied upon by the majority, held that a litigant's due process rights were violated when his administrative hearing was terminated for reasons completely beyond his control. In the instant case, no comparable situation occurred. Rather, the City clearly had an **opportunity** "granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case." *Id.* However, the City forfeited that opportunity by its behavior. As *Logan* also observed: "And the State certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule." *Id.* (emphasis in original). That is all that transpired before the Act 111 arbitrator in this case; thus, the City did receive the process that was constitutionally **due.** Significantly, there is no allegation or argument that the sanction the arbitrator imposed was not directly related to the misbehavior of the City in this case and in others.

Further, "where a court imposes a judgment by default against a defendant as a sanction for failure to respond adequately to discovery requests, **it is acting well within its**

**discretion** and the latitude given it by our Rules of Civil Procedure to enter 'a judgment by default against the disobedient party.'" *Fox v. Gabler*, 534 Pa. 185, 626 A.2d 1141, 1143 (1993) (quoting Pa. R.C.P. 4019(c)(3); emphasis added). In *Fox*, this Court noted that, in the initial stages of the case, the Superior Court had affirmed a judgment by default entered as a sanction and this Court had declined to accept further review.[1] *Id.* Yet here, we are entertaining this appeal, despite the fact that (1) the legislature has specifically **forbidden** appeals from Act 111 awards; (2) the arbitrator's decision resided in his discretion and is of a type sanctioned by the Rules of Civil Procedure; and (3) the arbitrator's sanction did not actually rise to the level of a default judgment.[2]

Further, although the majority professes to conduct its appellate review after having determined that such review is permissible under the narrow *certiorari* scope of review, the line drawn by the majority between its determination of whether we may review this case in the first instance and its actual "appellate review" is at best unclear, and in my opinion, inappropriately blurred. The majority's opinion reads as if it is justifying its power to conduct a review based on the fruits of that review. *See* op. at 282, 985 A.2d at 1268. Although

1.  *Fox* came before this Court at a later stage where the issue was whether it is appropriate to disregard the finality of a judgment in a subsequent damages proceeding.

2.  With respect to this last factor, the majority views the arbitrator's evidentiary ruling as equivalent to the entry of a default judgment because of its perception that the City was effectively precluded from offering any evidence. *See* op. at 280–81 n. 7 and 287–88, 985 A.2d at 1267 n. 7 and 1271–72. However, the FOP argued that the City could have called as witnesses the Police Department Internal Affairs Division ("IAD") investigator and the grievant. The majority asserts that this could not be so, but by so determining, the majority effectively takes the position that the FOP is being disingenuous to this Court and that had the City attempted to call these witnesses, the FOP would have objected to these witnesses because of the evidentiary sanction imposed by the arbitrator. There is simply no basis for the majority to have come to this disturbing conclusion. Now, the majority has essentially endorsed the City's strategy of refusing to proceed to a hearing on the case it could have brought, albeit with much less evidence than it would have wished to bring, on the gamble that the City would fare better on appeal. Respectfully, I believe that the majority errs significantly by

the majority correctly notes that appellate courts have a plenary standard of review when determining the applicability of the narrow *certiorari* scope of review to Act 111 appeals, such plenary standard must nevertheless yield in deference to the arbitrator's findings of fact. *See, e.g., Town of McCandless v. McCandless Police Officers Association*, 587 Pa. 525, 901 A.2d 991, 1000 (2006). The majority cannot ignore these factual findings and substitute its own factual "findings." However, as discussed *infra*, the majority did just that, apparently believing that it can actually set aside the arbitrator's factual findings based, apparently, on its misinterpretation of what constitutes a *de novo* review of the record. Indeed, regarding the majority's review as to whether the arbitrator appropriately imposed the sanction, the majority acts as if it were the "trial court." The negative consequences of the majority's approach here are potentially endless, and not just in the realm of Act 111 cases.

I believe that the majority has strayed in this matter in part because it has erroneously taken an evidentiary sanction, a measure that even the majority concedes rests in the tribunal's discretion, and conflated it with general considerations of deprivation of due process. *See* op. at 281–83, 985 A.2d at 1268–69. However, as *Logan, supra* observed, the two are very different. The majority's apparent confusion on this point may also explain why the essential due process case law the majority cites in its opinion is completely and wholly inapposite to the facts of this case and has nothing to do with discovery sanctions.[3] *Id.* at 283, 985 A.2d at 1269. This

elevating to a constitutional level what may be a strategic choice made by the City.

**3.** Among this case law is *Logan, supra,* which, as I have observed, bears no resemblance to the present case, but, in fact, by its language supports the conclusion that no constitutional violation is here implicated. Other cases cited by the majority include *Butler Bros. v. McColgan,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942); *Nixon v. Commonwealth,* 576 Pa. 385, 839 A.2d 277 (2003), and *Pennsylvania Game Com'n v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995). *Butler Bros.* simply involved whether the California Bank and Corporation Franchise Tax Act, as construed and applied to the appellant, violated the Fourteenth Amendment. *Nixon* involved whether the criminal records chapter of the Adults Protective Services Act, 35 P.S. §§ 10225.101–10225.5102, was unconstitutional as applied to the appellees. *Marich* involved whether a revocation of hunting and trapping licenses is subject to procedural due process.

confusion, I respectfully submit, leads to serious error on several fronts.

First, in the context of Act 111, the majority is now opening the door for appellate courts to review **discretionary** evidentiary decisions based on claims of a constitutional violation, when appellate courts are not even permitted to review arbitration decisions on **error of law** grounds. *See Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83, 90 (1995) ("An error of law alone will not warrant reversal under the narrow *certiorari* scope of review."). It cannot be emphasized too strongly that because the "interests of labor and management, as well as those of the general public" are served by swift **non-appealable** resolution of labor disputes concerning police and firefighters, the explicit "**restraint on judicial activism is *the linchpin* of**" Act 111. *Id.* at 89 (emphasis added). Therefore, this Court may not and must not interpret Act 111 in a manner that expands, or indeed even continues, the already too-prevalent practice of appellate review of "non-appealable" arbitration awards.

Again, in the present case there is no allegation that the arbitrator's sanction is unrelated to the City's behavior. We would be faced with a different situation—one that certainly could have serious due process implications—if the arbitrator had precluded the City from presenting evidence **unrelated** to its failure to obey a subpoena, thereby in actuality depriving the City of an opportunity to present its remaining evidence. That is not this case. Thus, where the case on appeal establishes that a party before the Act 111 arbitrator fully had an **opportunity** for a hearing, but forfeited its opportunity through its own action, I conclude that the Act 111 arbitrator's discretionary sanction ruling is beyond appellate review under the narrow *certiorari* scope of review. If appellate courts may not review allegations of legal error purportedly committed by Act 111 arbitrators [4] or review the arbitrator's factual findings,[5] they certainly cannot review allegations that an Act

4.  *Betancourt, supra* at 90.

5.  *McCandless, supra* at 1000.

111 arbitrator abused his or her discretion in making an evidentiary ruling, including a ruling that imposes a serious and potentially crippling sanction.

Second, I believe that in contexts beyond Act 111, the majority's decision will serve to interject chaos into the interpretation and application of Pa. R.C.P. 4019. The essence of the majority's position is that despite the fact that tribunals may impose even the severest of sanctions for discovery violations under our Rule 4019, because we "disfavor" sanctions that ostensibly dismiss an action,[6] such sanctions must therefore always implicate due process. Although it is undisputable that where appellate review is permitted, a severe sanction imposed under Rule 4019 should be given appropriate scrutiny, the majority here seems to signal that a trial judge's discretion to impose severe and crippling sanctions will be subject to a new constitutional test. Most troubling, the majority justifies its position by citation to cases that have absolutely nothing to do with the procedural posture involved in this case, or in any case involving the discretionary application of Rule 4019 sanctions, but rather involve basic principles of due process where the opportunity for a hearing has been allegedly denied. The majority now runs the risk that its decision will be interpreted by the practicing bar and tribunals below to equate the **forfeiture of an opportunity** to a hearing with a **deprivation of such opportunity** in the first instance. In *Logan, supra,* the United States Supreme Court held that a litigant's due process rights were violated when his administrative hearing was terminated for reasons completely **beyond his control.** Now, with its holding here, the majority embraces equating circumstances, such as the one addressed in *Logan,* with sanctions imposed under our Rules of Civil Procedure. I believe that the majority's decision will thereby potentially cause havoc, as the majority has now effectively modified Pa. R.C.P. 4019 and our holding in *Fox, supra,* without any serious explanation as to why.

**6.** Again, the arbitrator did not dismiss the City's case here; the City simply rested after being sanctioned.

Even if there were some basis for appellate courts to review the arbitrator's evidentiary ruling in this case—and I strongly maintain that there is not—I must also register my dissent to the scope and approach of the majority's actual appellate review of the record here. Essentially, my disagreement is with the majority's apparently equating a *de novo* review of the record standard with an implied authority to now act as the trial court. This is an extraordinary leap. Indeed, the case relied upon by the majority for such "proposition" simply provides that due process claims "are best reviewed as errors of law," and, hence, are reviewed under a *de novo* standard. *Pocono Manor Investors, L.P. v. Pennsylvania Gaming Control Board*, 592 Pa. 625, 927 A.2d 209, 219 (2007). Nothing in our jurisprudence permits an appellate court to substitute its "factual findings" for those of the statutorily designated factfinder because there happen to be allegations of errors of law, especially not in Act 111 cases. Moreover, in *Pocono Manor*, we were careful to note that, regarding the constitutional claims being made, the agency had failed to argue that it was acting within its discretion. *Id.* In the present case, by clear contrast, because the arbitrator imposed a sanction for a discovery violation, the appropriate standard is, and has always been in living memory, whether the arbitrator abused his or her discretion. *Fox, supra* at 1143. That is the standard that should be applied in this case, were review permissible within the scope of narrow *certiorari*.

We have described the abuse of discretion standard as "significantly deferential," defining it more fully as follows:

[I]t is important to emphasize that an abuse of discretion may not be found simply because an appellate court may have reached a different conclusion.... That is not the judicial function here. An abuse of discretion is not simply an error of judgment. It requires much more. If in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused.

*Bedford Downs Mgt. Corp. v. State Harness Racing Com'n,* 592 Pa. 475, 926 A.2d 908, 916 (2007) (quotation marks and citations omitted). Unfortunately, the majority ignores this appropriate standard and proceeds to review the evidence as if it were the trial court, substituting its judgment for that of the arbitrator seemingly at every turn.

First, the majority discredits the arbitrator's finding that the grievant suffered prejudice. Op. at 284, 985 A.2d at 1270–71. Established law prohibits appellate courts from reviewing, and thus potentially altering, the factual findings of Act 111 arbitrators. *McCandless, supra* at 1000. Aside from the circumstance that the majority ignores this law, the majority also appears to disregard the fact that the impact of the delay was not on the FOP lawyers but on the police officer who was then out of a job. The arbitrator did not abuse his discretion by concluding that the grievant suffered **some** prejudice in this instance, particularly when the officer had already been out of a job for some years.[7] The majority's conclusion of lack of prejudice is simply an impermissible substitution of its judgment for that of the arbitrator. Indeed, the majority ignores or dismisses without reason the arbitrator's findings that the City had the documentary evidence in question in its possession for three years during the pendency of the arbitration proceedings, but had refused to surrender it without the FOP formally demanding it by subpoena. Arbitration Opinion, dated October 2, 2006, at 5–6.

Next, the majority begins its fact-finding in earnest: "Thus, we find no willful misconduct on the City's part." Op. at 288, 985 A.2d at 1272. This "finding" of the majority is based on **its** reading of the record, which it believes shows that the FOP "conceded" that the City's failure to honor the subpoena was inadvertent. *Id.* In my opinion, the record cited by the majority simply reflects that the FOP, without making any concession, understood that the City's position was that its failure to honor the subpoena was a "clerical error." *See* Notes of Testimony ("N.T."), 7/25/06, at 11 and 23. However,

---

7. The grievant was terminated in December 2002, and the arbitrator's hearing was in July 2006.

the fact that the FOP had strenuously argued below that the City has demonstrated a disturbing pattern of failing to respond to FOP discovery requests in order to delay and derail the arbitration of grievances indicates to me that the FOP was not "conceding" that the City's failure to respond to the subpoena was innocent. More importantly, the arbitrator **did not find** that the FOP had made this concession, and it is beyond our standard of review to characterize the evidence to our liking. Further, although the arbitrator did **not** find that the City had acted in bad faith in this particular grievance arbitration matter, the arbitrator did determine that in **his** experience, the FOP has had significant compliance problems with the City in the past, and, thus, the City should simply no longer be permitted to ignore subpoenas. N.T., 7/25/06, at 30.

I believe that the majority fails to appreciate that the Act 111 arbitrator, with personal knowledge of the City's history of misbehavior in Act 111 grievance arbitrations, could reasonably take the position that the City must be disciplined because of its ongoing disregard of FOP subpoenas, and act accordingly within his discretion. Although there was no specific evidence of the City's "bad intent" with respect to the subpoena in this particular grievance, as all such evidence was solely within the City's possession, the arbitrator could, without making a specific finding of "bad intent" regarding the instant subpoena, nevertheless view the City's behavior with suspicion because of the arbitrator's knowledge of the City's past behavior. Again, an appellate court's job is not to review the record anew to arrive at an independent judgment, but to review the record to determine whether there are reasonable grounds for the discretionary rulings at issue.

The majority then continues its fact-finding by determining that the arbitrator's sanction precluded the City from presenting **any** evidence, despite the absolute absence of such factual finding by the arbitrator, and despite the FOP's **actual concession** that the City could have called the IAD investigator and the grievant himself to testify. Again, the majority apparently believes the FOP is being disingenuous and that it would have actually opposed the City had it attempted to call

these witnesses. It is not this Court's job on appeal to make such a "finding" or leap to such conclusions. If the FOP were being disingenuous, the opportunity to show this was foreclosed by the City's refusing to proceed with the hearing, opting instead for an appeal. Under the "significantly deferential" standard of appellate review that we must apply, the majority's failure to consider the consequences of the City's refusal to proceed is, I believe, troubling at best.

Then, the majority proceeds to "analyze the number of discovery violations by the City." Op. at 289, 985 A.2d at 1272. Once again, I must register my distress that the majority deems it appropriate to act as "trial court." The General Assembly did not intend that Act 111 arbitrators be so dismissed as insignificant trifles by appellate courts. Indeed, Act 111 grants rather extraordinary powers to its arbitrators, albeit within the narrow confines of their jurisdiction. Section 7 of Act 111, for example, not only provides that the Act 111 arbitrator's decision is "final" and "non-appealable," but it also provides that the final arbitrator's award serves as a **mandate** to the public employer to enact required legislation or take such other action as is necessary **to implement** the award in a time-specific fashion.[8] 43 P.S. § 217.7; *see also Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 498 A.2d 1305, 1309 n. 7 (1985). To my knowledge, no other tribunal in this Commonwealth has such vast power. More importantly, Act 111 makes the arbitrator the effective trial court whose decisions are intended not to be reviewable except under the narrowest of circumstances. If justifiably under the narrow *certiorari* scope of review, we have the extremely rare occasion to review an Act 111 arbitrator's evidentiary rulings, then I believe we must accord the arbitrator at least the same

8. However, it is as yet unexplored whether the arbitrator's power to compel the enactment of legislation or the promulgation of regulations involves only interest as opposed to grievance arbitration. As grievance arbitration is essentially confined to the arbitrator's interpretation and application of a collective bargaining agreement, one might conclude that there could be no reason for a grievance arbitrator's decision to compel the enactment of legislation or the promulgation of a regulation.

level of deference as we would any trial judge, and probably greater deference. *See McCandless, supra* at 1000.

With respect to the issue of the City's alleged past transgressions in failing to honor subpoena requests, the majority utterly fails to accord the arbitrator the deference due. Here, the majority simply dismisses the institutional **and actual** knowledge of the arbitrator concerning the City's past transgressions, not to mention the arbitrator's apparent finding that "six prior arbitrators have at least expressed their displeasure or have ruled against the City." Arbitration Opinion at 4. We would not dismiss the institutional knowledge or findings of any other trial court in this manner. Where there is evidence and institutional knowledge that one party in a narrow series of cases involving only one other party, and related by subject matter, has, for years, behaved improperly in discovery matters, it is simply beyond my comprehension that the majority would dismiss such evidence and knowledge as irrelevant. Among other things, in taking this position, the majority glosses over the City's apparent transgressions and thereby simply encourages the City to disregard discovery requests and abuse the system until stopped in some manner by a future case. I find this deeply troubling.

Further, and just as incomprehensibly, the majority posits that the City could not have been "on notice" in this case regarding its past transgressions. The majority bases this determination on a footnote discussion in *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 564 Pa. 290, 768 A.2d 291, 295 n. 3 (2001). However, in that case, we were discussing whether the City was on notice regarding a rather specific "out-of-class pay claim" because the FOP had raised similar claims in earlier, unrelated arbitrations. By contrast, the issue in the case *sub judice* concerned **ongoing** behavior by the City across a full spectrum of grievance arbitrations regarding not a substantive matter, but a procedural practice and repeated pattern concerning the FOP's discovery requests.[9]

9. The majority suggests that the FOP file a separate grievance and arbitrate the matter in order to place the City "on notice." I strongly

In sum, because the majority's "appellate review," in my respectful opinion, is nothing less than an impermissible substitution of the majority's judgment and fact-finding for that of the arbitrator, I cannot be a party to it. Moreover, because the majority has also failed to discern the existence of an overriding or misapplication of the law, a manifestly unreasonable decision, or evidence of the arbitrator's partiality, prejudice, bias, or ill-will, we are obliged to let the arbitrator's decision stand.

Finally, I take issue with the majority's assertion that we need not address the question of whether Act 111 arbitrators may, in the first instance, impose discovery sanctions. Op. at 287 n. 15, 985 A.2d at 1271 n. 15. One cannot read the majority's opinion without reasonably concluding that the majority **has already determined,** *sub silentio,* that Act 111 arbitrators have the power to impose discovery sanctions. Certainly, if Act 111 arbitrators lack such authority, there is no need to determine whether the arbitrator's decision in this case violated a constitutional right. The **seminal** issue in this case is whether the arbitrator has, in the first instance, the power to impose sanctions.[10] Thus, I respectfully submit that the majority has approached this case backwards. Further, in my opinion, there is no doubt that Act 111 arbitrators have the authority to impose evidentiary and discovery sanctions.[11]

First, as I have already observed, Act 111 arbitrators are temporary bodies of exceedingly limited jurisdiction, but with broad power within that jurisdiction. As we stated:

urge this Court to take the position that, **by this decision,** the City is **now** "on notice" that its past behavior in grievance arbitrations shall be at issue when there is any future failure to honor discovery requests by the FOP in Act 111 grievance arbitrations.

10. In fact, we *sua sponte* informed the parties that this was an essential issue on appeal. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Jason Breary),* 595 Pa. 403, 938 A.2d 986 (2007) *(per curiam ).*

11. In expressing my opinion, I disagree with the conclusion of the Commonwealth Court below that Act 111 arbitrators lack such authority, and most strenuously disagree with that court's conclusion that the forum for the FOP to enforce discovery requests is with the court of common pleas. *See City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary),* 932 A.2d 274, 286 (Pa.Cmwlth.2007).

An arbitration panel is a temporary 'one shot' institution, convened to respond to a specific conflict. Once it reaches a decision it is disbanded and its members disperse. **Its resolution of the dispute must be sure and swift, and much of its effectiveness would be lost if the mandate of its decision could be delayed indefinitely through protracted litigation.**

*City of Washington v. Police Department of City of Washington,* 436 Pa. 168, 259 A.2d 437, 440 (1969) (emphasis added). Further, as I have mentioned *supra,* the powers of Act 111 arbitrators are rather extraordinary within the confines of their narrow jurisdiction.

Even the majority concedes the power of Act 111 arbitrators to make and enforce evidentiary rulings, as Act 111 arbitrators could not carry out their mandate without such power. More importantly, Act 111 arbitrators are specifically granted the power to issue subpoenas to "**compel** the attendance of witnesses **and physical evidence.**" 43 P.S. § 217.6 (emphasis added). I believe that inherent in the power to issue subpoenas is the power to enforce them.

Further, I believe that Act 111 subpoenas must be enforced by the arbitrators rather than the courts of common pleas because of the critical legislative purposes behind Act 111 and the Act's very explicit "no appeal" mandate. In several opinions, this Court has discussed the origins of Act 111, the critical goals the legislature hoped to achieve with its enactment, and the specific pathways the legislature laid out for achieving these goals. Briefly, these matters have been characterized by this Court as follows:

Act 111 altered the landscape of employer-employee relations. While the legislature maintained the prohibition on striking by police and fire personnel, 43 P.S. § 217.5, it granted to the workers the right to collectively bargain as well as the right to an arbitration of their disputes. These arbitration provisions were one of the key aspects of the legislature's plan to ensure stability within the police and firefighting forces. The legislature designed Act 111 arbitration to be swift and final; it allowed judicial intervention

in the Act 111 context in only the rarest of circumstances. *Betancourt*, 656 A.2d at 89. The legislature feared that if resolution were to be forestalled by years of litigation, the illegal strikes that had rocked police and firefighting forces across the Commonwealth in the 1960s could very well reoccur.

*City of Philadelphia*, 768 A.2d at 294. Again, because the "interests of labor and management, as well as those of the general public" are served by swift non-appealable resolution of labor disputes concerning police and firefighters, the explicit "restraint on judicial activism is **the linchpin** of" Act 111. *Betancourt, supra* at 89 (emphasis added).

I believe that we would be removing that linchpin by forcing parties to Act 111 arbitrations to file actions in the courts of common pleas in order to enforce their discovery requests. Such a position would critically endanger the legislature's goal of "sure and swift" arbitration decisions. *City of Washington, supra* at 440. The "protracted litigation" caused by this approach would make a mockery of the "no appeal" mandate of Act 111. *Id.* The majority refuses to take a position as to the extent of the severity of the misbehavior alleged against the City in this case. However, the specter of the severity of such misbehavior serves to illustrate the damage that one party **could** inflict upon the legislative goal of "sure and swift" and "non-appealable" Act 111 arbitration awards, if such misbehavior could be corrected only in the courts of common pleas. Therefore, I believe it is incompatible with the text and spirit of Act 111 for Act 111 discovery requests to be enforced in the courts of common pleas. They must be enforced by the arbitrators.

For the above reasons, I respectfully dissent, particularly as I believe strongly that the consequences of the majority's approach to several matters in this case are potentially disastrous.