# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Coretta Avery | : | |
| | : | |
| v. | : | No. 311 C.D. 2018 |
| | : | ARGUED: March 12, 2019 |
| City of Philadelphia Board of | : | |
| Pensions and Retirement, | : | |
| Appellant | : | |


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                      HONORABLE P. KEVIN BROBSON, Judge
                      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                                    **FILED:  April 9, 2019**


The City of Philadelphia Board of Pensions and Retirement (the Board) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the appeal of former police officer Coretta Avery (Avery) and reversing the Board's denial of her application for service-connected disability retirement benefits.  We conclude that the trial court abused its discretion in (1) remanding the matter to the Board to determine the relevance and availability of a November 2008 letter from Dr. Paul Sedacca (November 2008 letter) which Avery alleged contradicted his September 2008 letter discharging her to return to full-duty employment and constituted new evidence; and (2) entering judgment against the Board for failure to schedule a hearing on remand.  Accordingly, pursuant to Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b), we reverse and remand this matter to the trial court for its appellate review of the merits based on the complete record made before the Board.

The pertinent background is as follows. In April 2008, Avery was on duty driving a police car when she sustained injuries in an accident. There was no emergency assistance at the scene and Avery did not seek emergency treatment. (Board's Finding of Fact "F.F." No. 4.) Thereafter, she returned to police headquarters and then went home. (F.F. No. 55.)

The following day, Avery sought treatment for injuries to her neck, upper and lower back, and left shoulder at Northeastern Hospital. (F.F. Nos. 6 and 57.) There, she underwent an x-ray and was told to return in two weeks. (F.F. No. 57.) The form from that visit reflects an estimate that Avery would be out of work for one week. (F.F. No. 6.)

Approximately one week after the accident, Avery began treating with Dr. Sedacca. Following his diagnosis of sprain and strain of the cervical spine, sprain and strain of the shoulder, and lumbar sprain and strain, he prescribed physical therapy and referred Avery for MRIs. (F.F. No. 7.) "Like the X-rays taken at the time of the accident, the [two 2008 MRI] studies were normal on the whole and did not reveal any acute abnormalities." (F.F. No. 8.)

From April to August 2008, Avery saw Dr. Sedacca approximately every two weeks. Once in July and twice in August, Dr. Sedacca recommended that Avery return to work with some restrictions. (F.F. No. 9.) On September 9, 2008, Dr. Sedacca wrote that Avery could return to full-duty work effective September 22. (F.F. No. 10.) Subsequently, Avery began treating with numerous other physicians.[1]

In December 2011, Avery applied for service-connected disability retirement benefits requiring her to prove that she was "permanently incapacitated from the further performance of duty" and that the "incapacity resulted solely from

---

[1] On April 14, 2008, the City of Philadelphia issued a notice of compensation payable for Avery's injuries. (F.F. No. 19.) In May of 2011, a workers' compensation judge granted the City's termination petition, finding full recovery as of October 15, 2009. (F.F. No. 21.) Neither party discusses whether that finding has preclusive effect here.

2

the performance of the duties of the member's position." Section 22-401(1) of the Philadelphia Retirement Code (Code). After reviewing the reports of four doctors and other injury-related documents, the Board denied Avery's application in September 2012. (F.F. No. 38.) Upon Avery's request for a hearing and a copy of all documents, the Board provided Avery with the entire file. (F.F. No. 39.) "On June 14, 2013, in preparation for the hearing, counsel for [Avery] submitted a packet of medical records and a signed stipulation agreeing to proceed on [her] testimony and the record evidence." (F.F. No. 40.) Avery submitted additional documents twice in June 2013. (F.F. No. 42.) After multiple continuances at her request, the Board held a hearing in August 2013. The hearing panel kept the record open for Avery's counsel to supplement it with an additional report from Dr. Andrew Freese (Freese report). (F.F. No. 78.)

In September 2013, Avery's counsel submitted the Freese report. (F.F. No. 79.)[2] Notably, Dr. Freese addressed his report to Avery's current attorney, Joyce Ullman, Esq., and indicated therein that he had reviewed the disputed November 2008 letter. (September 18, 2013, Freese Report at 5, Exhibit 56, PACFiled Record at 651; Reproduced Record "R.R." at 201a.) In addition, the Board considered the Freese report in rendering its decision. (F.F. Nos. 80-83.) The Board found that "[a]ll documents were provided to and considered by the hearing panel." (F.F. No. 52.)

In November 2013, the Board denied Avery's application. In addition to crediting numerous doctors, it accepted Dr. Sedacca's opinion that she could return to full-duty work. (F.F. Nos. 84 and 85.) As for Avery, the Board rejected those portions of her testimony where she attempted to show a connection between the accident and any current disability and to establish a head injury. In support, it

---

[2] Finding of Fact No. 79 has a typo in it that erroneously indicates that the report was submitted in 2003.

noted her failure to report any loss of consciousness, the lack of a contemporaneous diagnosis of a head injury, and her failure to seek emergency treatment at the time of the accident. In addition, it observed Avery's failure to include as part of her history that she was in another car accident in the fall of 2008. (F.F. Nos. 89-90.) Avery's December 2013 appeal followed.

On December 29, 2014, more than a year after the Board's adjudication and her appeal therefrom, Avery attached Dr. Sedacca's November 2008 letter to Ricky Liss, Esq. as Exhibit "A" to her brief to the trial court.[3] Avery alleged that the November 2008 letter constituted new evidence and warranted either reversing the Board's decision or vacating and remanding the matter to the Board to reopen the case and schedule a hearing.[4] The Board disagreed.[5]

Following oral argument, the trial court ordered the Board to convene an additional hearing to consider the relevance of the November 2008 letter and its availability at the time of the original hearing. Thereafter, the Board was to issue a decision and submit a supplemental record to the trial court at which time the trial court would reschedule oral argument. (Trial Court's July 9, 2015, Order at 1; R.R. at 10a.) However, the Board failed to schedule a hearing. By way of partial excuse for its oversight, the Board averred that its lapse "occurred during a period in which

---

[3] The Board alleges that Liss was Avery's workers' compensation attorney. (Board's Motion for Reconsideration of the Trial Court's January 18, 2018, Order at 2; R.R. at 36a.)

[4] In that November 2008 letter, Dr. Sedacca noted that he placed Avery on limited duty from April 10, 2008, to August 3, 2008, with an eventual return to full duty as of September 22, 2008. (November 19, 2008, Sedacca Letter at 2; R.R. at 144a.) Without revoking his discharge of Avery to return to full-duty employment, Dr. Sedacca also stated that she had a continuing impairment of bodily function. (*Id.*)

[5] The Board stated that Avery's counsel sent the November 2008 letter to it in December 2014 and requested that it reopen the case. (Board's April 26, 2015, Trial Court Brief at p.19; R.R. at 162a.) Noting that it denied Avery's request, the Board argued that the letter was not part of the record and did not constitute new evidence. Accordingly, the Board maintained that the letter did not warrant a remand or *de novo* review by the trial court. (*Id*. at 19-22; R.R. at 162a-65a.) We agree. *See infra* note 7.

4

the Board staff were [sic] adjusting to new responsibilities in the wake of the departure of the legal assistant who handled these matters . . . ." (Board's Motion for Reconsideration of the Trial Court's January 18, 2018, Order at 4; R.R. at 38a.)

Over two years later, Avery filed an October 2017 petition with the trial court requesting that it sustain her appeal and reverse the Board's denial of her application for benefits. In granting Avery's requested relief, the trial court declined to characterize its entry of judgment against the Board as a sanction but nonetheless primarily relied on the Board's failure to abide by the remand order in support of its reversal. In addition, the trial court stated that it had discretion to determine the adequacy of the Board's record. The Board's appeal followed.

On appeal, the salient issues are as follows: (1) whether the trial court abused its discretion in remanding the matter for consideration of the November 2008 letter; and (2) whether the trial court improperly entered judgment as a sanction against the Board for failure to schedule a remand hearing to consider the letter. We review these issues pursuant to the abuse of discretion standard, which provides:

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused.

*Mielcuszny v. Rosol*, 176 A. 236, 237 (Pa. 1934).

As an initial matter, there were no grounds for the trial court to have remanded the matter based on the November 2008 letter. It is well established that a record may not be "considered incomplete based solely on a party's failure to present evidence available at the hearing," and remand is not appropriate to permit a party "another opportunity to prove what he or she should have proved in the first place." *Kuziak v. Borough of Danville*, 125 A.3d 470, 475 (Pa. Cmwlth. 2015)

5

[quoting *Ret. Bd. of Allegheny Cty. v. Colville*, 852 A.2d 445, 451 (Pa. Cmwlth. 2004)]. As noted, the Freese report that Avery's current counsel submitted to the Board in September 2013 referenced the November 2008 letter. As we also noted, the Board afforded Avery additional opportunities to supplement the record during the pendency of the matter before it and she signed a stipulation agreeing to proceed on her testimony and the record evidence. Thus, at the time of the Board's hearing, the letter was available, counsel was—or at least should have been—aware of it and there was no legitimate excuse for not producing it.

Moreover, it is hard to imagine how the November 2008 letter could have changed the result before the Board. Avery was required to establish that she was permanently incapacitated from the further performance of duty and that such incapacity resulted solely from the performance of the duties of her position. Section 22-401(1) of the Code. Dr. Sedacca in his November 2008 letter did not disavow or second-guess his discharge of Avery to return to full-duty work; he merely indicated that at the time of discharge she had a continuing impairment of her bodily function.[6]

---

[6] Specifically, Dr. Sedacca stated:

> Prognosis for complete recovery must be listed as guarded, primarily based upon the nature, severity and permanency of the aforementioned injuries . . . . These injuries in fact do constitute a serious and permanent impairment of bodily function for the patient regarding full use of her neck and lower back region and very importantly also place her at much greater risk for further injury in the future as well. As such, I can state with reasonable medical certainty that upon discharge, Coretta Avery was still not enjoying the same lifestyle, level of comfort nor level of activity involving the full use of her neck nor lower back region to which she was accustomed prior to the injuries sustained on April 2, 2008 [date of the accident at issue].

(November 19, 2008, Sedacca Letter at 2; R.R. at 144a.)

Accordingly, we conclude that the trial court abused its discretion in remanding the matter to the Board for consideration of the letter years after the Board's record was closed.

We turn now to the trial court's entry of judgment against the Board for failure to schedule a hearing. Although the trial court suggested that its decision was not imposed as a sanction, its analysis focused almost exclusively on the Board's fault, and certainly has all the earmarks of a sanction, and we review it as such.[7] In adopting Avery's proffered remedy, the trial court stated:

> [T]his court properly exercised its discretion in rejecting the remedy which [the Board] was seeking and granting the remedy [Avery] was seeking. This court's ruling was not a sanction against [the Board], but an acknowledgement for [Avery] to have her appeal timely adjudicated and not delayed further than the 28 months it had already been delayed. As such [Avery's] prejudice by the delay far outweighed [the Board's] excuses for its administrative errors in failing to comply with this court's order to schedule a remand hearing.

(*Id.*)

---

[7] In the midst of its lengthy discussion of the standards relating to sanctions, the trial court stated that it "considered the letter with [the Board's] record and made an appropriate ruling after considering the weight of all evidence in [the] record, as well as [the Board's] refusal to schedule a remand proceeding to consider that letter" (Trial Court April 13, 2018, Opinion "Op." at 9), which seems to suggest some sort of hybrid basis for its ruling. At all events, this could not be a valid decision on the merits. On appeal from an agency's adjudication, the trial court may review the agency's decision based on its supported factual findings or, if the record is incomplete, it may hold a *de novo* hearing. It cannot accept a document *dehors* the record and then re-weigh the evidence before the agency and find its own facts.

While it is axiomatic that courts have the inherent power to enforce their orders by imposing penalties and sanctions for failure to comply,[8] that power is not unfettered and is subject to scrutiny under the abuse of discretion standard.[9]

In exercising discretion, a trial court need not mechanically consider a laundry list of factors.[10] However, a trial court should weigh at least some of the following criteria:

> (1) Whether the transgression was part of a pattern of improper behavior, misconduct or abuse; (2) whether the transgression was inadvertent; (3) whether the court attempted to contact counsel; (4) whether the opposing party would be prejudiced by the transgression; and (5) whether the court gave any consideration to lesser sanctions.

*Williams v. Sch. Dist. of Phila.*, 870 A.2d 414, 416 (Pa. Cmwlth. 2005).[11]

In the present case, the trial court characterized the Board's delay as tantamount to "administrative errors." (Trial Court's April 13, 2018, Opinion "Op". at 10-11.) This determination is consistent with the concession of the Board's counsel that the failure to comply with the remand order was a mistake and an administrative failure. Certainly, there is no indication that the Board exhibited a pattern of improper behavior, misconduct, or abuse, and the trial court did not so find.

---

[8] *Davis v. Se. Pa. Transp. Auth.*, 680 A.2d 1223, 1226 (Pa. Cmwlth. 1996).

[9] *Commonwealth v. Shaffer*, 712 A.2d 749, 751 (Pa. 1998).

[10] *See Thompson v. Houston*, 839 A.2d 389, 391 (Pa. Super. 2003).

[11] These criteria or similar equitable factors are not limited to situations where counsel fails to appear at a hearing, but also are applicable when ascertaining whether other transgressions should be excused. *See City of Phila. v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1270-71 (Pa. 2009) (failure to respond to a subpoena); *Shaffer*, 712 A.2d at 752 (failure to comply with discovery orders); and *Seidel v. Great Factory Store*, 435 A.2d 896, 898 (Pa. Super. 1981) (failure to timely file brief).

Turning to the prejudice criterion, the trial court's determination that Avery suffered prejudice was strained, speculative, and contingent upon facts not found. The trial court reasoned:

> [The Board's] assertion that [Avery] suffered no prejudice by [its] failure to schedule a hearing *is uncertain*. If the [B]oard had changed its decision based on Dr. Sedacca's letter of November 19, 2008 then [Avery] had to continue to live without her pension benefits almost three (3) years since this court's July 9, 2015 remand order, which *could have* a substantial effect on her quality of life. *In that case* [Avery] did suffer prejudice. [Emphasis added.]

(*Id.* at 11.) By way of analysis, Avery only lost money in the interim if she was entitled to it in the first place. If the trial court ultimately finds that she was entitled to benefits, a monetary sanction could make her whole. Accordingly, we conclude that the trial court abused its discretion in finding prejudice.

Turning to the severity of the sanction, we conclude that the trial court's entry of judgment against the Board was a manifestly unreasonable reaction to an administrative breakdown. In choosing to reverse, the trial court never considered a lesser sanction, but instead rendered a decision that was disproportionate to the admitted administrative error and inappropriately focused solely on the passage of time.

Accordingly, we reverse and remand this matter for the trial court's appellate review of the merits on the complete record made before the Board.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Coretta Avery                                    :
                                                 :
              v.                                 :    No. 311 C.D. 2018
                                                 :
City of Philadelphia Board of                    :
Pensions and Retirement,                         :
                        Appellant                :


# **O R D E R**


AND NOW, this 9th day of April, 2019, the order of the Court of Common Pleas of Philadelphia County is hereby REVERSED and this matter is REMANDED in accordance with the foregoing opinion.

Jurisdiction relinquished.


_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge